[Civ. No. 14396. Third Dist. July 17, 1974.]

CALIFORNIA CHIROPRACTIC ASSOCIATION,
Plaintiff and Appellant, v.
BOARD OF ADMINISTRATION, PUBLIC EMPLOYEES'
RETIREMENT SYSTEM et al., Defendants and Respondents.

702

## Counsel

Walter G. Mortensen for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, N. Eugene Hill and Carol Hunter, Deputy Attorneys General, Downey, Brandy, Seymour & Rohwer, Stephen F. Boutin and John F. Downey for Defendants and Respondents.

## Opinion

**GOOD, J.,**\*—Plaintiff appeals from the judgment of dismissal with prejudice after defendants' demurrers to the second amended complaint were sustained without leave to amend on the ground that the second amended complaint did not state facts sufficient to constitute a cause of action.

Plaintiff, a non-profit corporation representing doctors of chiropractic in the State of California, filed an action for declaratory relief (Code Civ. Proc., § 1060) seeking a declaration that a provision of a group insurance policy issued by the California-Western States Life Insurance Company (CWS) to the Board of Administration of the Public Employees' Retirement System (PERS) was void upon constitutional grounds discussed below. The policy, C.W.S. 7405, provided for reimbursement of specified medical expenses that were incurred by state employees within the group covered. The policy excluded reimbursement of expenses for chiropractic treatment. In relevant part, Insurance Code section 10176 provides: "In disability insurance the policy may provide for payment of medical, surgical, chiropractic, physical therapy, psychological, dental, hospital, or optometric expenses upon a reimbursement basis, *or for the exclusion of any such services,* . . . (Italics added.)

Plaintiff does not challenge the constitutionality of Insurance Code section 10176 but focuses attack upon section 10176.2 which reads: "As an

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

alternative to total exclusion of physical therapy services, as permitted by Section 10176, a disability insurance policy may provide that physical therapy services will be paid only if rendered pursuant to a method of treatment prescribed by a person holding a certificate issued pursuant to subdivision (a) of Section 2135 of the Business and Professions Code." The certificate referred to is that issued to a physician and surgeon—an M.D. The subject policy excluded coverage for physical therapy unless it was prescribed by a doctor of medicine.

In four separate causes of action the complaint charged that Insurance Code section 10176.2 is violative of four sections of the California Constitution. ■ It invoked article I, section 11 (requiring uniform operation of general laws) and section 21, proscribing special privileges or immunities) and article IV, section 16 (invalidating special statutes if a general statute can be made applicable). It also alleged a violation of section 24(c) of article IV which provides that the Legislature may amend or repeal an initiative statute only by submitting any change to the electorate.

The practice of disposing of substantive issues raised in a complaint for declaratory relief by a judgment of dismissal is subject to criticism but has received sanction in cases where any declaration of the rights of the parties would necessarily be adverse to plaintiff and nonsuit or dismissal is the equivalent of an express declaration that a plaintiff had failed to establish any rights. In such cases the procedural error of the trial court does not require the reversal of a judgment. (*Anderson* v. *Stansbury* (1952) 38 Cal.2d 707, 717 [242 P.2d 305]; *Stribling* v. *Mailliard* (1970) 6 Cal.App.3d 470, 473-475 [85 Cal.Rptr. 924].)

The statute providing for the licensing of chiropractors is an initiative statute. (See Bus. & Prof. Code, §§ 3-1000–3-1007 (West's 3d ed.); Deering's Bus. & Prof. Code, Appendix I, § 1 et seq.) Insurance Code section 10176.2 does not amend or repeal any section of the Chiropractic Act. It does not limit the services a chiropractor may render under his professional license. Article IV, section 24(c) of the Constitution is inapplicable and does not invalidate section 10176.2 as an improper legislative amendment of an initiative statute without a referendum.

The substantive issue herein is whether or not in its practical application said section constitutes an invidious discrimination against chiropractors in derogation of equal protection rights under the three remaining constitutional provisions invoked by the complaint. The constitutional implica-

tions of these provisions were considered in *Lelande* v. *Lowery* (1945) 26 Cal.2d 224 [157 P.2d 639, 175 A.L.R. 1109]. The court said at page 232: "A law is special within the prohibitions of the California Constitution (art. I, §§ 11, 21; art. IV, § 25 [now § 16]) when it is not founded on a natural, intrinsic, or constitutional distinction which reasonably justifies difference in treatment. [Citations.] The Legislature can make reasonable classifications; i.e., classifications which have a substantial relation to a legitimate object to be accomplished. [Citations.] A law is general and uniform and affords equal protection in its operation when it applies equally to all persons within such classification. [Citations.]"

In resolving an equal protection challenge a court must determine whether the statute in question is subject to a standard of strict judicial scrutiny because a suspect classification or fundamental interest is involved or to a standard of judicial restraint that is generally applicable to legislation regulating social or economic matters. (*Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765, 784-785 [87 Cal.Rptr. 839, 471 P.2d 487].) The recent California Supreme Court decision in *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1 [112 Cal.Rptr. 786, 520 P.2d 10], is dispositive of the question of which standard applies to the statute here subject to review. Referring to these standards, at pages 16 and 17, the *D'Amico* court said: "The first is the basic and conventional standard for reviewing economic and social welfare legislation in which there is a 'discrimination' or differentiation of treatment between classes or individuals. It manifests restraint by the judiciary in relation to the discretionary act of a co-equal branch of government; in so doing it invests legislation involving such differentiated treatment with a presumption of constitutionality and 'requir[es] merely that distinctions drawn by a challenged statute bear some rational relationship to a conceivable legitimate state purpose.' [Citation.] 'So long as such a classification "does not permit one to exercise the privilege while refusing it to another of like qualifications, under like conditions and circumstances, it is unobjectionable upon this ground." [Citations.]' Morever, the burden of demonstrating the invalidity of a classification under this standard rests squarely upon *the party who assails it*. [Citations.]" (Original italics.)

"A more stringent test is applied, however, in cases involving 'suspect classifications' or touching on 'fundamental interests.' Here the courts adopt 'an attitude of active and critical analysis, subjecting the classification to strict scrutiny. [Citations.] Under the strict standard applied in such cases, *the state* bears the burden of establishing not only that it has a com-

pelling interest which justifies the law but that the distinctions drawn by the law are *necessary* to further its purpose.' [Citation.]" (Original italics.)

The *D'Amico* case involved a differentiation between treatment of physicians and osteopaths. The *D'Amico* court noted that since its decision in *Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351], the United States Supreme Court in *San Antonio School District* v. *Rodriguez* (1973) 411 U.S. 1, at pages 33-34 [36 L.Ed. 2d 16, at pages 42-43, 93 S.Ct. 1278], limited the term "fundamental interests," for the purpose of determining the judicial standard applicable in equal protection cases, to those interests which are explicitly or implicitly guaranteed by the Constitution. It was further noted that in the exceptional cases involving occupational regulations wherein the "strict scrutiny" standard had been held applicable because of a suspect classification there was "invariably involved a classification drawn along the lines which rendered it 'suspect' in constitutional terms—such as national origin or alienage [citations] or sex [citation.]" The court also said: "[T]o the extent that [the case of] *Sail'er Inn* may be interpreted to find a cognizable 'fundamental interest' in the right to pursue employment, it is clearly limited in scope to 'the common occupations of the community' and should not be applied to professions whose technical complexity and intimate relationship to the public interest and welfare counsel greater deference to the legislative judgment." (*D'Amico* v. *Board of Medical Examiners, supra,* 11 Cal.3d, p. 18.)

The classification between physicians and chiropractors was upheld in *Crees* v. *California State Board of Medical Examiners* (1963) 213 Cal.App. 2d 195 [28 Cal.Rptr. 621]. At page 218, the court said: "In the instant case plaintiffs practice 'one school' of the healing art; drugless practitioners practice another. The training of the two groups is different; their respective practices of healing art are not the same. It cannot therefore be said that providing separate classifications for the two professions and somewhat different regulations for each operates to discriminate unreasonably against chiropractors." ■ We conclude that section 10176.2 of the Insurance Code is not subject to strict judicial scrutiny.

Plaintiff contends that section 10176.2 of the Insurance Code, in the guise of an insurance regulation, authorizes the state to discriminate against the chiropractic profession in the field of physical therapy. They point out that in this limited branch of the healing arts their professional training and license qualifies them to perform and prescribe such services on an equal footing with medical doctors, except, of course, that chiropractors

may not prescribe drugs listed in "materia medica" to ease pain or relax tension. They argue that said section and the insurance policy purchased by PERS creates un unfair competitive advantage to physicians, who are the "publicly avowed antagonists" of the chiropractic profession, and lends credence to "propaganda presently being propagated" by the medical profession "that chiropractic methods are ineffectual and may be harmful to a patient."

The challenge is aimed solely at the particular policy provisions authorized by Insurance Code section 10176.2 and does not question the validity of section 10176. In effect, plaintiff concedes that the Legislature could constitutionally authorize insurance companies to issue policies that limit coverage to reimbursement only for medical services and to exclude services that may be provided by other disciplines of the healing arts. The subject policy herein is essentially medical and *generally* excludes physical therapy services. The clause in question is simply an auxiliary and subordinate provision reinforcing the concentration of the policy on medical coverage. It covers necessary physical therapy only when it is employed as an adjunct to treatment of an insured patient by a doctor of medicine. In contractual contexts, the clause and section 10176.2 do not appear to be aimed at chiropractors at all. The section does not limit the services or treatment a chiropractor may render. It is an insurance regulation and has no impact upon the sections of the Business and Professions Code that establish the latitudes within which members of a profession may practice any branch of the healing arts. ■ Although the provisional clause it authorizes indirectly effects a differentiated treatment between physicians and chiropractors in the coverage of physical therapy expenses incurred by their patients, it does not affect the fundamental rights of either profession to pursue their respective vocations.

When medical treatment for an illness or injury must be supplemented by physical therapy if maximum recovery is to be achieved, insurance coverage of the costs thereof is a matter involving public health. Also, time lost from employment through illness or disability has impact in industry and upon the individual and may add to the burden of social welfare. Section 10176.2 constitutes a legislative determination that a limited alternative to the total exclusion of coverage for physical therapy should be permitted in medical insurance policies and that it was in the public interest to do so. ■ The subject matter, because it deals with economic and social problems, is one wherein courts must bow to legislative experience and deference to the legislative judgment is counseled because the differentiation (indi-

rectly effected) bears "a rational relationship to a conceivable legitimate purpose." (*Westbrook* v. *Mihaly, supra,* 2 Cal.3d 765.) Where a policy is exclusively medical in coverage, the classification effected by the clause authorized by said section 10176.2 as an adjunct thereto was within the constitutional prerogatives of the Legislature.

The judgment is affirmed.

Friedman, Acting P. J., and Regan, J., concurred.