[Civ. No. 17244. Third Dist. May 9, 1978.]

FRANCHISE TAX BOARD, Petitioner, v.
KENNETH CORY, as State Controller, Respondent;
FAIR POLITICAL PRACTICES COMMISSION et al.,
Interveners.

## COUNSEL

Evelle J. Younger, Attorney General, Iver E. Skjeie and L. Stephen Porter, Assistant Attorneys General, and Richard D. Martland, Deputy Attorney General, for Petitioner.

D. Robert Shuman and Linda Rossman for Respondent.

Daniel H. Lowenstein, Robert M. Stern, Michael J. Baker, Natalie E. West, Lee C. Rosenthal, Bion M. Gregory, Legislative Counsel, Ray H. Whitaker, Chief Deputy Legislative Counsel, John A. Corzine, James L. Ashford and David D. Alves, Deputy Legislative Counsel, for Interveners.

## OPINION

**PARAS, J.—**

I

A major purpose of the Political Reform Act of 1974 (hereinafter the Act)[1] is that "Receipts and expenditures in election campaigns should be

---

[1]The Act is an initiative statute, enacted into law by vote of the people. (Cal. Const., art. II, § 8.)

fully and truthfully disclosed in order that the voters may be fully informed and improper practices may be inhibited." (Gov. Code, § 81002, subd. (a).)[2] (See *Socialist Workers etc. Committee* v. *Brown* (1975) 53 Cal.App.3d 879, 888 and fn. 11 [125 Cal.Rptr. 915].) To carry out this purpose, the Act provides for the Franchise Tax Board to audit the financial reports submitted by candidates for public office. (§§ 90000-90006.)[3] It further provides for its own repeal only by vote of the people (§ 81012, subd. (b)), and for amendment by the Legislature only upon certain strict conditions as follows: "This title may be amended to further its purposes by statute, passed in each house by rollcall vote entered in the journal, two-thirds of the membership concurring and signed by the Governor, if at least 20 days prior to passage in each house the bill in its final form has been delivered to the commission for distribution to the news media and to every person who has requested the commission to send copies of such bills to him." (§ 81012, subd. (a).)

On June 24, 1977, the annual budget bill was passed by the Legislature (Sen. J. (June 24, 1977) pp. 3948, 3951-3952, 3977.) Item 106(d) of the budget made an appropriation to the Franchise Tax Board to carry out its duties under the Act. Accompanying the appropriation appeared the following controversial "control language:"

" . . . . . . . . . . . . . . . . . .

■ "provided, . . . that except as otherwise provided in this item, no funds appropriated by this act may be expended for any campaign audits unless such audits are conducted according to audit standards promulgated by the American Institute of Certified Public Accountants, and no funds appropriated by this act may be used for audit inquiries of more than 10 percent of the campaign transactions subject to the audit, which 10 percent sample shall be by letter that only requires the contributor to verify the amount reported and requires a response only in the case where the contributor's records differ from the reported amount; ■ provided, further, that no funds appropriated by this act may be expended for an audit of more than 25 percent of the campaign expenditures, determined on the basis of the total number of such

---

[2] All section references henceforth are to the Government Code, unless otherwise indicated.

[3] An excellent summary of the purposes and provisions of the Act may be found in Diamond et al., *California's Political Reform Act: Greater Access to the Initiative Process* (1975) 7 Sw.U.L.Rev. 453.

transactions, irrespective of the dollar amounts involved in such transactions, of any candidate subject to Section [4] 90001 of the Government Code and provided, further, however, that if the Franchise Tax Board finds, after making an initial audit, an indication of fraud, further investigation of such fraud may be conducted to establish whether material facts have been deliberately concealed, irrespective of the limitations on audits set forth in this item." (Stats. 1977, ch. 219.)

On June 30, 1977, the Governor "item vetoed"[4] this control language (but not the appropriation). In doing so, he stated: "Item 106—For support of the Franchise Tax Board. I eliminate language. I am eliminating the following language in this item because it raised a serious constitutional issue of the separation of powers." (Stats. 1977, ch. 219.)

Responding to the Governor's challenge, the Legislature adopted Senate Concurrent Resolution No. 55 (1977 res., ch. 112, filed with the Secretary of State on Sept. 15, 1977), stating in part:

"WHEREAS, The Legislature believes that the elimination of such control language is improper and constitutes an encroachment upon the powers of the Legislature and raises very serious questions in this regard; now, therefore, be it

"*Resolved by the Senate of the State of California, The Assembly thereof concurring,* That the Legislature hereby urges the Controller of the State of California not to allow the use of any funds appropriated by Item 106 of the Budget Act of 1977 in a manner contrary to the provisions contained in the control language of Item 106 of the Budget Act of 1977, as passed by the Legislature; . . ." (Italics in original.)

The Controller then advised the Franchise Tax Board on September 21, 1977, that because of the possibility of personal liability under *Stanson* v. *Mott* (1976) 17 Cal.3d 206 [130 Cal.Rptr. 697, 551 P.2d 1], he would not issue any warrants for expenditures not conforming to the control language. Thereupon, on October 7, 1977, the Franchise Tax Board filed the present petition for writ of mandate in the Supreme Court, seeking to compel the Controller to disregard the control language. On October 11, 1977, the Supreme Court transferred the case here. We permitted the true protagonists, the California Legislature and the Fair

---

[4]Article IV, section 10, subdivision (b), of the California Constitution provides in part: "The Governor may reduce or eliminate one or more items of appropriation while approving other portions of a bill. . . ."

Political Practices Commission (which bears major responsibility for administering the Act), to intervene; and on December 16, 1977, we issued an order to show cause.

## II

Article II, section 10, subdivision (c), of the California Constitution provides: "The Legislature may amend or repeal referendum statutes. It may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without their approval."

It is undisputed that the Act is an initiative statute and that its own amendment procedures were not complied with by the Legislature. It follows that if item 106 is an "amendment" to the Act, it is in contravention of the Constitution and hence void.

The Legislature correctly asserts that the audit provisions of the Act do not by their terms conflict with the control language of item 106. The Act does not prescribe the standards under which audits are to be conducted, nor does it prohibit the use of the sampling techniques of the control language.[5] Nevertheless, conflict with existing law is neither an essential, nor even a normal attribute of an amendment. An amendment is ". . . any change of the scope or effect of an existing statute, whether by addition, omission, or substitution of provisions, which does not wholly terminate its existence, whether by an act purporting to amend, repeal, revise, or supplement, or by an act independent and original in form, . . ." (Sutherland, Statutory Construction (4th ed. 1972) § 22.01, p. 105.) A statute which adds to or takes away from an existing statute is considered an amendment. (*Robbins* v. *O. R. R. Company* (1867) 32 Cal. 472.)

[5]The most pertinent parts of the Act are as follows:

Section 90000. "Except as provided in Section 90006, the Franchise Tax Board shall make audits and field investigations with respect to reports and statements filed with the Secretary of State under Chapters 4 and 6 of this title."

Section 90001. "Audits and investigations shall be made pursuant to Section 90000 with respect to the reports and statements of:

". . . . . . . . . . . . . . . . . . . . .

"(b) Each candidate who has received more than fifteen percent of the total vote cast for the office for which he was running in either a general or special election;

"(c) Each candidate running in a primary, general, or special election for whom the Franchise Tax Board determines more than twenty-five thousand dollars ($25,000) of expenditures have been made, whether by the candidate or by a committee or committees supporting his candidacy;

"(d) Each committee, other than a committee defined in Section 82013(c), supporting

In *Assets Reconstruction Corp.* v. *Munson* (1947) 81 Cal.App.2d 363, 368 [184 P.2d 11], the court described an amendment as " 'a legislative act designed to change some prior or existing law by adding or taking from it some particular provision.' " And in *Balian Ice Cream Co.* v. *Arden Farms Co.* (S.D.Cal. 1950) 94 F.Supp. 796, 798-799, the analysis necessary to determine whether a particular act is or is not an amendment to a prior statute is described as follows: "Whether an act is amendatory of existing law is determined not by title alone, or by declarations in the new act that *it purports to amend* existing law. On the contrary, it is determined by an examination and comparison of its provisions with existing law. If its aim is to clarify or correct uncertainties which arose from the enforcement of the existing law, or to reach situations which were not covered by the original statute, the act is amendatory, *even though in its wording* it does not purport to amend the language of the prior act." (Italics in original.)

█ The control language unquestionably adds to the Act, both by clarifying the standards to be used and by significantly restricting the manner in which audits are to be conducted. As such it undertakes to amend the Act, and along with resolution No. 55, is invalid.[6]

The foregoing disposition makes it unnecessary to discuss other contentions of the parties.

one or more such candidates, insofar as its reports and statements relate to the support of such candidates;

"(e) Each committee, other than a committee defined in Section 82013(c), which is required to register or file reports or statements with the Secretary of State, and which the Franchise Tax Board determines has spent more than ten thousand dollars ($10,000) during any calendar year."

Section 90002. "(b) . . . When the campaign statements of a candidate or a committee supporting a candidate are audited and investigated, the audit and investigation shall cover all campaign statements filed in connection with any primary and general or special elections and any previous campaign statement filed pursuant to Section 84206 since the last campaign statement filed in connection with an election.

"(c) The Franchise Tax Board shall determine from its audit and investigation if there is probable cause to believe that any candidate, committee or proponent of a state measure has exceeded the limitations provisions of Chapter 5."

Section 90004. ". . . The reports of the Franchise Tax Board shall be public documents and shall contain in detail the Franchise Tax Board's findings with respect to the accuracy and completeness of each report and statement reviewed and its findings with respect to any report or statement that should have been but was not filed."

[6]It is arguable that the Legislature's unauthorized attempt to control the manner in which audits are conducted was a violation of the doctrine of separation of powers. (Cal. Const., art. III, § 3.) Our holding is not based upon that theory however. We hold simply that the control language undertakes substantively to amend the Act and does so in violation of the procedural requirements of section 81012 and of article II, section 10, subdivision (c) of the California Constitution.

Let a writ issue directing the respondent Kenneth Cory, as Controller of the State of California, to issue warrants for the payment of lawful expenditures of petitioner Franchise Tax Board under item 106(d) without regard to the second and third provisions thereof (and, needless to say, without regard to res. No. 55.)

Puglia, P. J., and Reynoso, J., concurred.

A petition for a rehearing was denied June 2, 1978, and the petition of intervener Legislature for a hearing by the Supreme Court was denied July 14, 1978. Bird, C. J., did not participate therein. Sullivan, J.,* participated therein. Mosk, J., and Newman, J., were of the opinion the the petition should be granted.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.