[No. D019470. Fourth Dist., Div. One. May 24, 1995.]

MOBILEPARK WEST HOMEOWNERS ASSOCIATION, Plaintiff, v. ESCONDIDO MOBILEPARK WEST et al., Defendants and Appellants; CITY OF ESCONDIDO, Intervener and Respondent.

**COUNSEL**

Swanson & Dowdall, Swanson & Gieser, Jim P. Mahacek, Davis & Schroeder, G. Gervaise Davis III, Scott Schroeder, Horvitz & Levy, David M. Axelrad and Richard L. Hasen for Defendants and Appellants.

David R. Chapman, City Attorney, Jeffrey Epp, Assistant City Attorney, Endeman, Lincoln, Turek & Heater, Donald R. Lincoln, James C. Allen and Linda B. Reich for Intervener and Respondent.

**OPINION**

**HUFFMAN, J.**—The trial court granted a judgment on the pleadings, declaring certain ordinances of the City of Escondido (the City) to be facially valid, in the City's complaint in intervention in an underlying action

between plaintiff Mobilepark West Homeowners Association (the residents) against their landlord, Escondido Mobilepark West and Charles E. Jacobson (the owners). The owners have appealed this judgment on the pleadings, contending that the ordinances (Nos. 91-19 & 88-50), which the City characterizes as clarification and implementation of a voter initiative measure establishing rent control in the City (commonly known as Proposition K, section 29-101 et seq. of the City Municipal Code), were actually invalid legislative amendments of the initiative measure. (Elec. Code,[1] former § 4013, now renumbered to § 9217.) The owners also contend the ordinances invaded an area preempted by state law. (Civ. Code, § 798.17.)

We agree with the owners that ordinance No. 91-19 was an improper legislative amendment of Proposition K and is thus facially invalid.[2] We further agree with the owners that as to existing homeowners, ordinance No. 91-19 is preempted by Civil Code section 798.17 (covering the field of setting conditions on the right of a park owner and existing homeowners to enter into rent control-exempt leases) and is therefore facially invalid on that basis also. We reverse the judgment with directions to the trial court to enter judgment in favor of the owners on the facial invalidity issues.[3]

### Factual and Procedural Background

In June 1988, the City's voters passed Proposition K, an initiative ordinance establishing mobilehome park space rent review for the City. The initiative defines numerous terms it uses, including "tenant" as "a person

---

[1]All statutory references are to the Elections Code unless otherwise specified. Effective January 1, 1995, the Elections Code was repealed and reenacted with a different numbering system. The Elections Code provision pertinent to this case was renumbered but did not undergo any substantive modification. In this opinion, we shall make all Elections Code references to the current numbering system.

For purposes of discussing the facial validity issues raised, we need only consider the current version of the ordinance, No. 91-19, the law in effect at the time of this reviewing court's decision. (*Gregory* v. *City of San Juan Capistrano* (1983) 142 Cal.App.3d 72, 78 [191 Cal.Rptr. 47], disapproved on another point in *Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644, 686, fn. 43 [209 Cal.Rptr. 682, 693 P.2d 261].)

[2]The predecessor ordinance to No. 91-19, No. 88-50, was repealed effective January 9, 1991, and its provisions essentially reenacted in No. 91-19 on May 15, 1991, after certain amendments to Civil Code section 798.17 ("Exemption from Local Rent Control Measures: Right to Inspect Agreement") were first enacted and then repealed. These amendments pertain to coverage by Civil Code section 798.17 of prospective homeowners in mobilehome parks. We will discuss this issue as necessary in connection with the preemption arguments made.

[3]After the trial court upheld the facial validity of the ordinances, it proceeded to trial on the underlying action between the residents and the owners, culminating in a damages verdict against the owners in the amount of $1.7 million. We have not been advised of any appeal by the owners of this judgment and, in any case, may review the judgment on the pleadings as a final resolution of the issues concerning the City.

who has a tenancy in a mobilehome park." It establishes a mobilehome park rental review board (Rent Review Board), which has the duty of hearing rent increase applications and approving or disapproving rent increases. The initiative sets base rents as of a certain date and establishes procedures for park owners to apply for rent increases.

After the initiative was passed, disputes arose among owners and residents as to whether the residents or prospective residents could be required to sign long-term leases (12 months or over). Such long-term leases are exempt from rent control pursuant to Civil Code section 798.17, subdivision (a), which has been in effect in various forms since 1985.

A series of events, set out in legislative history materials submitted here, then took place with respect to whether park owners could require prospective homeowners to sign long-term leases that would be exempt from rent control.[4] In August 1988, the city council passed ordinance No. 88-50, with the stated intention of clarifying that under Proposition K, a park owner could not require either an existing or prospective homeowner to sign a long-term lease which would be exempt from rent control. In 1990, the Legislature amended Civil Code section 798.17 with Senate Bill 2009 (Stats. 1990, ch. 1046), which appeared to permit owners to require prospective homeowners to sign long-term leases that would be exempt from rent control. In response, the city council repealed ordinance No. 88-50. However, due to unforeseen problems that arose regarding preemption, the Legislature in 1991 repealed Senate Bill 2009 by further amending Civil Code section 798.17, with the purpose of reinstating the state law as it existed before Senate Bill 2009 was enacted. Language accompanying the measure which repealed Senate Bill 2009 stated that it was being repealed because it had inadvertently preempted local ordinances which gave certain protections to prospective homeowners. (Stats. 1991, ch. 24, § 3, Rep. to Sen. Com. on Judiciary, "Mobilehome Parks—Repeal of S.B. 2009, 1990"; Rep. to Sen. Rules Com.; Rep. to the Assem. Com. on Housing & Community Development.)

Once Senate Bill 2009 and its amendments to Civil Code section 798.17 were repealed, the City adopted on May 15, 1991, as an urgency matter, ordinance No. 91-19, which essentially reenacted ordinance No. 88-50. The declaration of urgency for the ordinance stated that it was intended to deal with hardships on purchasers and prospective purchasers, as well as sellers,

---

[4]Although we need not deal directly with the legislative history arguments raised here, as we will explain (pt. II, *post*), it is necessary to set forth the background of ordinance No. 91-19 to reach a fuller understanding of its scope of coverage.

of mobilehomes, because certain park owners were informing prospective mobilehome purchasers that they must sign a long-term lease as a condition of the park owner's approval of the sale, resulting in denial of the benefits of the rent protection initiative.

Ordinance No. 91-19 first defines the term "tenant" as "not only a person who has an existing tenancy in a mobile home park but also a person who has purchased or is in the process of purchasing or otherwise acquiring a mobilehome that will remain at that particular park." Section 2 of the ordinance then sets forth a procedure for dealing with leases for periods of more than 12 months (exempt from rent control) in the following manner: subdivision (a) requires submission of a long-term lease to the Rent Review Board for review to determine if it complies with the terms of the rent protection ordinance (Proposition K), before it is offered to any tenant. Subdivision (b) then requires that before any long-term lease (in excess of 12 months) is executed by the tenant, the owner must "(1) offer the tenant the option of a rental agreement for a term of 12 months or less, (2) provide the tenant with a copy of the Rent Protection Ordinance, and (3) inform the tenant both orally and in writing that if the tenant signs a lease or rental agreement with a term in excess of 12 months which has been reviewed and approved by the Board in accordance with the provisions of the Rent Protection ordinance, the lease or rental agreement may not be subject to the terms and protections of the Rent Protection Ordinance." Subdivision (c) then provides that a long-term lease shall not be exempt from Proposition K unless it complies with each and every requirement in Civil Code section 798.17, subdivisions (a) through (c), for exemption from rent control of such leases offered to homeowners.

Six months after ordinance No. 91-19 went into effect, a number of residents of Mobilepark West sued the owners, alleging, among other things, that they had refused to follow the procedures in the City's rent ordinances, including Nos. 88-50 and 91-19. An amended pleading brought in the residents as the plaintiff. The City filed a complaint in intervention seeking declaratory relief as to the validity of those ordinances.[5]

In the underlying action between the residents and the owners, the owners filed a motion for a judgment on the pleadings, arguing that ordinances Nos.

---

[5]The City also filed essentially the same allegations as found in its complaint in intervention in this action in a companion action, City of Escondido v. Escondido Mobilepark West (Super. Ct. San Diego County, 1992, No. N55233).) After the City's summary judgment motion in that matter was denied, as triable issues were found regarding the "as-applied" invalidity of the ordinance, the parties stipulated to stay that action pending the appeal in this

88-50 and 91-19 were preempted by Civil Code section 798.17 and were void as illegal amendments of the initiative (pursuant to Elec. Code, former § 4013, now § 9217). Ultimately, this motion was denied before trial. However, as the case proceeded between the residents and the owners, the residents filed a motion *in limine* to exclude evidence regarding the validity of Proposition K and these ordinances. A stipulation was reached between the City and the owners, indicating that the court could separately rule on the facial validity of these ordinances. The trial court then issued a judgment on behalf of the City only on its complaint in intervention against the owners, declaring ordinances Nos. 88-50 and 91-19 facially valid. The matter then proceeded to trial on the action by the residents against the owners, resulting in a verdict in favor of the residents. (See fn. 3, *ante*.) The owners separately appealed the judgment in favor of the City. Judicial notice has been requested and granted of legislative history materials as to Civil Code section 798.17, ballot arguments as to Proposition K, and the disposition of the related actions. (Evid. Code, §§ 452, 459; fn. 5, *ante*.)

## DISCUSSION

We first address the owners' claims that ordinance No. 91-19 is an improper amendment to Proposition K, an initiative ordinance, because it was enacted by the city council rather than by the voters. (§ 9217.) We then discuss the preemption issue with regard to existing homeowners only, as the owners in their reply brief have abandoned any arguments on appeal regarding preemption with regard to prospective homeowners. Along the way, we will discuss the collateral estoppel claims as necessary.

Generally, the law to be considered and applied by the reviewing court is the law in effect at the time of its decision. (*Gregory v. City of San*

---

case. Certain matters judicially noticed in action No. N55233 have been incorporated into this record.

A number of other actions brought by the Mobilepark West owners, attacking various aspects of Proposition K and the ordinances, have been voluntarily dismissed. (Escondido Mobilepark West I v. City of Escondido (Super. Ct. San Diego County, 1988, No. N40547); Escondido Mobilepark West II v. Johnson (Super Ct. San Diego County, 1988, No. N41017); Escondido Mobilepark West I v. City of Escondido (Super Ct. San Diego County, 1988, No. N41735.) Still another action, Escondido Mobilepark West I v. City of Escondido (Super. Ct. San Diego County, 1989, No. N43925), was dismissed after the City's demurrer was sustained without leave to amend, and an appeal was taken and consolidated with 11 other similar appeals, under the name of *Yee v. City of Escondido.* That matter went to the United States Supreme Court, which affirmed the state court decision upholding the constitutionality of the rent ordinances against facial challenges that they constituted a physical taking of property. (*Yee v. Escondido* (1992) 503 U.S. 519 [118 L.Ed.2d 153, 112 S.Ct. 1522]; *Yee v. Mobilehome Park Rental Review Bd.* (1993) 17 Cal.App.4th 1097 [23 Cal.Rptr.2d 1].) We discuss these cases to the extent necessary with reference to the City's contention that all facial challenges to ordinances Nos. 88-50 and 91-19 are now barred by res judicata and/or collateral estoppel.

*Juan Capistrano, supra,* 142 Cal.App.3d at p. 78.) It is a judicial function to interpret the language of the ordinance, and this record is adequate for determining that legal issue. (*Ibid.*) To determine the facial validity of the challenged ordinances, we need address our attention only to the version now in effect, No. 91-19.

I

*Amendment of Initiative Measure*

Section 9217, reenacting without substantive change former section 4013, sets forth the rules for determining the effective date of an initiative measure or a municipal ordinance proposed by initiative. In pertinent part, the section states: "No ordinance that is either proposed by initiative petition and adopted by the vote of the legislative body of the city without submission to the voters, or adopted by the voters, *shall be repealed or amended* except by a vote of the people, unless provision is otherwise made in the original ordinance." (Italics added.) Proposition K itself, the original rent protection ordinance, does not include any provision setting forth a procedure for its amendment. The preamble to ordinance No. 91-19 states that the ordinance is adopted "in order to clarify" the rent protection ordinance. We therefore look to case law for a definition of the term "amendment" to see if the terms of ordinance No. 91-19 fall within it.

In *Franchise Tax Bd.* v. *Cory* (1978) 80 Cal.App.3d 772, 776-777 [145 Cal.Rptr. 819], the court defines an amendment as " '. . . any change of the scope or effect of an existing statute, whether by addition, omission, or substitution of provisions, which does not wholly terminate its existence, whether by an act purporting to amend, repeal, revise, or supplement, or by an act independent and original in form, . . .' [Citation.] A statute which adds to or takes away from an existing statute is considered an amendment. [Citation.]" The court went on to describe an amendment as " ' "a legislative act designed to change some prior or existing law by adding or taking from it some particular provision." ' " (*Id.* at p. 777.) One does not determine whether an act amends existing law solely by the title, or by statements in the new act that it amends existing law. Rather, one must examine and compare the provisions of the new law with existing law. (*Ibid.*) " 'If its aim is to clarify or correct uncertainties which arose from the enforcement of the existing law, or to reach situations which were not covered by the original statute, the act is amendatory, *even though in its wording* it does not purport to amend the language of the prior act.' (Italics in original.)" (*Ibid.*; see also, *Lesher Communications, Inc.* v. *City of Walnut Creek* (1990) 52 Cal.3d 531,

540, fn. 8 [277 Cal.Rptr. 1, 802 P.2d 317]: "One not inconsequential impact of the enactment of a municipal initiative is the statutory requirement that any future amendment of the initiative ordinance be submitted to the voters for approval. [Former § 4013.]")

In *DeVita* v. *County of Napa* (1995) 9 Cal.4th 763 [38 Cal.Rptr.2d 699, 889 P.2d 1019], the Supreme Court upheld the exercise of the initiative power to amend the land use element of a general plan. In discussing a parallel section to section 9217 (i.e., § 9125, which is applicable to county, as opposed to municipal, initiatives, and which forbids their amendment except by vote of the people unless otherwise provided in the initiative), the Supreme Court explained that such provisions have their roots in the constitutional right of the electorate to initiative, ensuring that successful initiatives will not be undone by subsequent hostile boards of supervisors. (*DeVita* v. *County of Napa*, *supra*, 9 Cal.4th at p. 788.) The Supreme Court stated that the county board of supervisors could amend the general plan in ways that do not conflict with the provisions of the initiative measure, and explained the proper method for other amendment as follows: "If a future board determines that a part of the general plan enacted by voter initiative must be amended for the sake of general plan currency, *then the board can propose such an amendment to the electorate*, . . . We should not presume—nor, given the rule that doubts should be resolved in favor of the initiative and referendum power, should we assume the Legislature presumed—that the electorate will fail to do the legally proper thing." (*Id.* at pp. 792-793, fn. omitted, italics added.) Thus, it appears that the Supreme Court assumes that amendments which may conflict with the subject matter of initiative measures must be accomplished by popular vote, as opposed to legislatively enacted ordinances, where the original initiative does not provide otherwise.

 Using the standards of section 9217, the owners argue that ordinance No. 91-19 clearly amends Proposition K by changing the scope of its coverage to include prospective homeowners by redefining the term "tenant," and by placing new requirements on owners and tenants for entry into rent control exempt long-term leases (i.e., scrutiny of the leases by the Rent Review Board, the making of certain disclosures and offers of short-term leases, and the incorporation by reference of Civil Code section 798.17, subdivisions (a) through (c)). Certainly, these arguments appear to fit well within the criteria for determining whether an amendment has been made as set forth in *Franchise Tax Bd.* v. *Cory*, *supra*, 80 Cal.App.3d 772, because ordinance No. 91-19 changes the scope of the existing ordinance and adds provisions, and thus seeks to clarify or correct uncertainties in existing law. (80 Cal.App.3d at pp. 776-777; also see 58 Ops.Cal.Atty.Gen. 104 (1975), to

the effect that personnel included in the civil service system by an initiative ordinance may not be withdrawn from the system without submitting the matter to a vote of the people.)

The City, however, seeks to bring this case within several exceptions that have been developed to the rule of section 9217. First, it contends there are ambiguities in Proposition K which may be clarified by an ordinance such as No. 91-19. In *Armstrong* v. *County of San Mateo* (1983) 146 Cal.App.3d 597, 622-625 [194 Cal.Rptr. 294], the Court of Appeal found that ambiguous language in California Constitution, article XIII A (Proposition 13) was properly subject to legislative interpretation by the enactment of statutes addressing issues raised by the constitutional provision. Similarly, in *Creighton* v. *City of Santa Monica* (1984) 160 Cal.App.3d 1011, 1021-1022 [207 Cal.Rptr. 78], it was found proper for a city to pass ordinances implementing basic policy regarding rent control that had been adopted by an initiative charter amendment. That initiative measure established a rent control board and set forth its duties to register rental units, establish and adjust rent levels, and issue permits for removal of controlled units. However, the court found that the challenged city ordinances, which provided for city officials to administer and supervise the board's affairs, were proper as implementations of the voters' intent and clarifications of ambiguous areas in the initiative. (*Ibid.*)

Along these lines, the City argues that the broad scope of coverage of Proposition K, control of mobilehome space rent increases, is subject to "clarification" by the terms of ordinance No. 91-19. However, that ordinance goes beyond the original scope of Proposition K by adding to the definition of tenants affected by the initiative, and by requiring owners to offer certain options and disclosures before exempt leases may be executed. Thus, more than just clarification was accomplished by ordinance No. 91-19. Nor is the City's argument well taken that ordinance No. 91-19 was consistent with the voters' intent in enacting Proposition K, by granting as many people as possible the protections of the rent control ordinance, because the initiative measure adequately defined its scope of coverage without requiring the assistance of the city council in enacting follow-up ordinances.[6] We cannot say the ordinance advanced the purposes of Proposition K when it expanded its scope and added new provisions, rather than merely implementing it. (See *Creighton* v. *City of Santa Monica, supra,* 160 Cal.App.3d at pp. 1021-1022.) We therefore find the authority regarding permissible legislative clarification

[6]To the extent that the City relies on declarations of drafters of the initiative measure to show its intended scope of coverage, *C-Y Development Co.* v. *City of Redlands* (1982) 137 Cal.App.3d 926, 932-933 [187 Cal.Rptr. 370], indicates that such evidence is not persuasive as to voter intent, and that the ballot arguments are the only proper extrinsic aid which could be considered on that subject. We have been provided with the ballot arguments through judicial notice materials, but they do not support the City's position.

of ambiguous initiatives to be distinguishable here; Proposition K is not an ambiguous measure in its definition of the "tenant" to be governed by the rent protection ordinance (not including prospective tenants). Nor are any ambiguities raised by the terms of Proposition K as to the requirements for entering into rent control-exempt leases, such as ordinance No. 91-19 addresses.

It is also no defense for the City to contend that ordinance No. 91-19 is a "separate ordinance [which does] not purport to amend [Proposition K]", in light of the ordinance's preamble stating that the object was to clarify the rent protection ordinance. This argument claims that ordinance No. 91-19 is merely legislation in a related but distinct area, such that legislative enactments related to the subject of an initiative statute may be allowed. (See *California Chiropractic Assn.* v. *Board of Administration* (1974) 40 Cal.App.3d 701, 704 [115 Cal.Rptr. 286].) Rather, because Proposition K establishes comprehensive rent control procedures, its scope of coverage and the conditions under which a rent control exempt lease may be entered into are not merely a related area, but rather go to the heart of the coverage of the initiative measure. For all of these reasons, ordinance No. 91-19 must be considered invalid under the standards of section 9217 as an improper legislative amendment of an initiative measure.

II

*Preemption by State Law*

Although we have determined that the City could not properly legislatively amend Proposition K through ordinance, and therefore reverse the judgment on the pleadings with directions to enter a different judgment, we believe it is necessary to address the alternative grounds argued by the owners for invalidity of the ordinance, i.e., preemption. This issue is of public interest and may recur in this or another case, e.g., if the City electorate were to amend Proposition K in the same manner as ordinance No. 91-19 purported to do. We need only, however, address the preemption issue as to existing homeowners (which essentially translates into the fact situation of a renewal of leases), because the owners have abandoned their argument on appeal that the preemption theory applies to prospective homeowners as well. Because that issue is no longer pursued as to prospective homeowners, we need not analyze in detail the legislative history materials submitted concerning preemption as to prospective homeowners in this context. ■ Instead, we focus upon the extent to which Civil Code section 798.17 occupies the field of the rules applicable to the execution of rent control exempt leases, i.e., leases for a period of more than 12 months.

In *Sherwin-Williams Co.* v. *City of Los Angeles* (1993) 4 Cal.4th 893, 897-898 [16 Cal.Rptr.2d 215, 844 P.2d 534], the Supreme Court summarized general principles governing preemption law. The California Constitution, article XI, section 7, permits a county or city to make and enforce within its limits "all local, police, sanitary, and other ordinances and regulations not in conflict with general laws."

" 'If otherwise valid local legislation conflicts with state law, it is preempted by such law and is void.' [Citations.]

" 'A conflict exists if the local legislation " 'duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication.' " ' [Citations.]

"Local legislation is 'duplicative' of general law when it is coextensive therewith. [Citation.]

"Similarly, local legislation is 'contradictory' to general law when it is inimical thereto. [Citation.]

"Finally, local legislation enters an area that is 'fully occupied' by general law when the Legislature has expressly manifested its intent to 'fully occupy' the area [citation], or when it has impliedly done so in light of one of the following indicia of intent: '(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the' locality [citations]." (*Sherwin-Williams Co.* v. *City of Los Angeles, supra,* 4 Cal.4th at pp. 897-898.)

Earlier, in *Fisher* v. *City of Berkeley, supra,* 37 Cal.3d at pages 707-708, the Supreme Court said, "A potentially preemptive 'field' of state regulation is 'an area of legislation which includes the subject of the local legislation, and is sufficiently logically related so that a court, or a local legislative body' can detect a patterned approach to the subject.' [Citation.]"

In *Gregory* v. *City of San Juan Capistrano, supra,* 142 Cal.App.3d at page 84, the court observed that the question in considering a claim of preemption by implication is always, what is the "field"? In that case, in upholding a

local rent control ordinance, the court observed that state legislation, the Mobilehome Residency Law (Civ. Code, § 798 et seq.) comprehensively regulates certain aspects of mobilehome park residency, but does not purport to deal with all aspects of such residency, such as the amount of rents (except for forbidding rent discrimination against homeowners who exercise a statutory right to request a 12-month rental agreement). (*Gregory, supra*, 142 Cal.App.3d at p. 84.)

In our case, the owners characterize the relevant "field" as the requirements that may be placed on park owners and tenants before rent control exempt leases may be executed. They question what "local hoops" must they jump through in order to demonstrate that their rental agreements are exempt under Civil Code section 798.17. In contrast, the City characterizes the relevant "field" as "legislation concerning those leases subject to rent control which state law has not preempted."

To determine the scope of the field that the state legislation has occupied, we turn to Civil Code section 798.17. There the Legislature provided in subdivision (a) that rental agreements meeting the criteria of subdivision (b) shall be exempt from local rent control. Subdivision (a)(2) requires a bold-face or capital letters disclosure to the homeowner at the beginning of the rental agreement that it will be exempt from rent control. Subdivision (b) then sets forth 4 criteria for exempt leases: (1) The rental term shall be for more than 12 months; (2) the homeowner will use the rental for personal and actual residence; (3) a 30-day period for acceptance or rejection of the rental agreement is required; and (4) a 72-hour period to void the rental agreement is allowed the homeowner. Subdivision (c) then provides that if the homeowner rejects or rescinds the rental agreement, a rental agreement for a lesser period of time must be afforded, at similar monthly terms as the longer term lease. Next, subdivision (e) prohibits the assessment on a mobilehome park or space of administrative or other fees pertaining to a rent control-exempt space.

It is necessary to compare the terms of Civil Code section 798.17 to the terms of ordinance No. 91-19 to determine whether the ordinance invades a field fully occupied by state law. As explained above, the test is whether the ordinance duplicates, contradicts, or enters an area fully occupied by state law, " ' " ' either expressly or by legislative implication.' " ' " (*Sherwin-Williams Co.* v. *City of Los Angeles, supra*, 4 Cal.4th at pp. 897-898.) The parties agree that the Mobilehome Residency Law does not preempt local rent control as such, and that the amount of rent is not the issue here. (See *Robinson* v. *City of Yucaipa* (1994) 28 Cal.App.4th 1506,

1513 [34 Cal.Rptr.2d 291].) Rather, this court must focus on whether state law has already created a mechanism to exempt leases from local rent control laws, and whether the City can impose further requirements on owners and residents before such exempt leases may be created.

Turning to the language of ordinance No. 91-19, we are concerned with subdivisions (a), (b), and (c) of section 2.[7] Section 2, subdivision (a), of ordinance No. 91-19 requires that a lease for a period of over 12 months (a long-term lease) must, before being offered to any tenant, be submitted for review to the Rent Review Board for a determination of whether it complies with the terms of Proposition K. This subdivision is in contradiction of Civil Code section 798.17, subdivision (a), providing that long-term leases meeting the criteria of Civil Code section 798.17, subdivision (b), shall be exempt from local rent control regulations. In other words, section 2, subdivision (a), of the ordinance permits certain local control over leases that have otherwise qualified for exemption from rent control under state law, and thus it is inimical to the terms of the statute. As argued by the owners in their reply brief: "When the state has set the standards for exempting a legal area from local control, it is axiomatic that the local government cannot determine whether the criteria for preemption are met. To allow the local government to do so places the power to determine preemption in precisely the wrong hands."

Next, section 2, subdivision (b), of ordinance No. 91-19 sets forth certain options and disclosures which the owner must convey to the tenant before any long-term lease is executed. First, the tenant must be offered the option of a lesser lease term; second, the tenant must be given a copy of the rent protection ordinance; and third, the owner must inform the tenant that if a long-term lease is signed, it may not be subject to the terms and protections of Proposition K. All three of these provisions have been preempted by Civil Code section 798.17. First, Civil Code section 798.17, subdivision (c), already requires that an owner offer a tenant the option of a shorter term rental agreement, so the ordinance duplicates the statute at least insofar as existing homeowners are concerned (although it is difficult to know why such residents would want a shorter rental agreement than a year if they own their own coach, unless they seek to sell it).

Second, Civil Code section 798.17, subdivision (a) already exempts qualifying leases from all local rent control regulations. The requirement in the

[7]As noted above, we need not discuss section 1 of the ordinance and its redefinition of the Proposition K definition of "tenant" with reference to the preemption arguments because the owners are no longer pursuing any contention on that issue.

ordinance that an owner give a tenant a copy of the rent protection ordinance is in contradiction of this subdivision; it imposes an additional and superfluous requirement of disclosure of the ordinance as to those leases which the state has allowed to be exempt from such local rent control.

Third, Civil Code section 798.17, subdivision (a)(2) contains a requirement that the first sentence of a long-term lease must notify the tenant in a certain written manner that it is exempt from rent control, so the oral notification requirement of such exemption in ordinance No. 91-19, section 2, subdivision (b), is an additional requirement of additional notice that is not required by state law, while the written notice is duplicative. A parallel additional notice requirement established by a municipal ordinance, lengthening the period of notice required for rent increases beyond the requirements of state law, was found preempted on contradiction grounds in *Tri County Apartment Assn.* v. *City of Mountain View* (1987) 196 Cal.App.3d 1283, 1292-1298 [242 Cal.Rptr. 438]. In such cases, where a statute has set the amount of notice required, the municipality may not impose further requirements of additional notice.[8]

Finally, section 2, subdivision (c), of ordinance No. 91-19 incorporates by reference the terms of Civil Code section 798.17, subdivisions (a) through (c), by stating that a long-term lease shall not be exempt from Proposition K unless it complies with such requirements. This incorporation by reference amounts to a duplication of state law, and is therefore improper. The overall effect of section 798.17 is that of a "patterned approach" (*Fisher* v. *City of Berkeley*, *supra*, 37 Cal.3d at pp. 707-708) to the subject of the conditions which may be placed upon the decision of an owner and a resident to execute a long-term lease, and preemption should therefore be found.

Moreover, we are not persuaded by the City's argument that the upholding of Proposition K by the United States Supreme Court in *Yee* v. *Escondido*, *supra*, 503 U.S. 519, against a facial validity challenge on the grounds of a physical taking of property, accomplishes a collateral estoppel as to the issues raised in this action. The rules we must apply to this argument are set forth in *Interinsurance Exchange of the Auto. Club* v. *Superior Court* (1989) 209 Cal.App.3d 177, 181 [257 Cal.Rptr. 37]:

[8]In *Tri County Apartment Assn.* v. *City of Mountain View, supra*, 196 Cal.App.3d 1283, the subject ordinance was not a rent control ordinance, but rather dealt with landlord-tenant relationships regarding notice. (Civ. Code, § 827.) The preemption principles discussed in the opinion are equally relevant in this context, i.e., determining preemption of any local ordinance by state law.

"Concerning the aspect of res judicata applicable to this case, 'in a new action on a *different cause of action*, the former judgment is not a complete merger or bar, but is effective as a *collateral estoppel*, i.e., it is conclusive on issues actually litigated between the parties in the former action.' [Citations.]

" '[A] former judgment is not a collateral estoppel on *issues which might have been raised but were not*; just as clearly, it is a collateral estoppel on issues which were raised, *even though some factual matters or legal arguments which could have been presented were not.*' [Citation.]" (Original italics.)

In determining whether a matter is to be deemed decided by a prior judgment, the inquiry is whether the matter was within the scope of the prior action, and related to the subject matter and relevant to those issues, so that it could have been raised before. If so, the judgment is deemed conclusive on the matter even if it was not pleaded or argued. (*Interinsurance Exchange of the Auto. Club* v. *Superior Court, supra*, 209 Cal.App.3d at p. 182.) Applying these rules here, it is plain that these Elections Code issues and the preemption questions were not within the scope of the action decided in *Yee* v. *Escondido, supra*, 503 U.S. 519. There, the issue before the court was a constitutional taking issue on either a physical taking or a regulatory taking theory. (*Id.* at p. 532 [118 L.Ed.2d at p. 168].) An argument that an ordinance is facially invalid can take many forms, and the form that argument took in *Yee* was not dispositive of the forms in which that argument is made in this action. " '[A] former judgment is not a collateral estoppel on issues which might have been raised but were not. . . .' " (*Interinsurance Exchange of the Auto. Club* v. *Superior Court, supra*, 209 Cal.App.3d at p. 181, italics omitted.) The theory of collateral estoppel is not properly applicable here.

In conclusion, the City complains in its respondent's brief that it will be disruptive to the economic area of mobilehome park landlord-tenant relations, in this and other jurisdictions, for this court to find ordinance No. 91-19 facially invalid on any grounds. The City points out that ordinance No. 91-19 and its predecessor have been in place since 1988. The owners reply that the mere passage of time does not somehow validate a local ordinance which is preempted by state law. We are required to interpret Civil Code section 798.17 and, for that matter, Elections Code section 9217, and apply them to these ordinances in light of existing authority without regard to the particular view of public policy and the result-oriented considerations that the City urges.

## DISPOSITION

The judgment is reversed with directions to the trial court to enter a different judgment declaring ordinance No. 91-19 facially invalid. Costs to appellant.

Benke, Acting P. J., and Nares, J., concurred.

A petition for a rehearing was denied June 21, 1995.