Filed 3/18/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G057564 |
| v. | (Super. Ct. No. 08CF0919) |
| ALFREDO CRUZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, John Conley, Judge. Reversed and remanded.

Allen G. Weinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Thomas S. Patterson, Assistant Attorney General, Tamar Pachter and Nelson R. Richards, Deputy Attorneys General, as Amicus Curiae on behalf of Defendant and Appellant.

Todd Spitzer, District Attorney, and Seton B. Hunt, Deputy District Attorney, for Plaintiff and Respondent.

\*       \*       \*

Defendant Alfredo Cruz was convicted of second degree murder in 2010. In 2019, he filed a petition in the superior court for vacation of his murder conviction and resentencing under newly enacted Penal Code section 1170.95.[1] Section 1170.95 was enacted as part of Senate Bill No. 1437 (Stats. 2018, ch. 1015, § 4) (Senate Bill 1437), which took effect January 1, 2019. Senate Bill 1437 amended the natural and probable consequences doctrine for murder and the felony-murder rule "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Senate Bill 1437 also provided for retroactive application of these amendments by creating a process in section 1170.95 through which qualifying defendants can have their murder convictions vacated and be resentenced. (Stats. 2018, ch. 1015, § 4.)

Here, the court did not determine whether defendant qualified for relief, but instead denied the petition on the ground that Senate Bill 1437 is unconstitutional. The court concluded Senate Bill 1437 violates article II, section 10, subdivision (c), of the California Constitution for two reasons: (1) it amends Proposition 7, which, when approved by voters in the 1978 general election, increased the penalty for first and second degree murder, and (2) it amends Proposition 115, which, when passed by voters in the 1990 primary election, added five serious felonies to the list of crimes warranting a first degree felony-murder conviction.

Appealing from the denial of his petition, defendant argues the court erred by finding Senate Bill 1437 unconstitutional. He seeks reversal of the court's order and a remand for a hearing on its merits. The California Attorney General, in his capacity as the "'chief law officer of the State,' (Cal. Const., art. 5, § 13)," filed an amicus curiae brief on behalf of defendant, defending the constitutionality of Senate Bill 1437 by

_____

[1] All further statutory references are to the Penal Code unless otherwise stated.

2

arguing it amends neither Proposition 7 nor Proposition 115. The Orange County District Attorney (hereinafter District Attorney), representing the People in this appeal, contends otherwise. The District Attorney maintains Senate Bill 1437 amends both propositions and is therefore an unconstitutional "intrusion into the voters" initiative powers.

The voters' initiative powers that the District Attorney is concerned about are provided for in our state constitution. It protects the will of the electorate by prohibiting the Legislature from undoing what the voters have done through the initiative process. The Legislature remains free to pass laws concerning areas related to but distinct from those covered in an initiative statute but the legislation may not take away from an initiative's provisions without the voters' consent. (*People v. Kelly* (2010) 47 Cal.4th 1008, 1025 (*Kelly*).) We conclude the Legislature's enactment of Senate Bill 1437 has not undone what the voters accomplished with Proposition 7 or Proposition 115 and therefore the legislation does not violate the constitution. Senate Bill 1437 addresses the elements of murder, an area related to but distinct from the penalty for murder set by voters in Proposition 7. Nothing in the language of Proposition 7 nor its ballot materials evidences an intent by the voters to prohibit the Legislature from refining the elements of murder, namely limiting accomplice liability under the natural and probable consequences doctrine or felony-murder rule. Nor did the voters so limit the Legislature with the passage of Proposition 115.

In this opinion and in the concurrently published opinion filed in *People v. Solis* (Mar. 18, 2020, G057510) __ Cal.App.5th __, we conclude Senate Bill 1437 is constitutional. Reaching this conclusion, we find ourselves in agreement with the majorities in *People v. Superior Court* (*Gooden*) 42 Cal.App.5th 270 (*Gooden*) and *People v. Lamoureux* (2019) 42 Cal.App.5th 241 (*Lamoureux*), which also concluded Senate Bill 1437 did not amend either "Proposition 7 or Proposition 115 because it

3

neither added to, nor took away from, the initiatives." (*Gooden,* at p. 275; accord, *Lamoureux, supra*, at p. 251.)[2]

We reverse the court's order denying defendant's petition and remand the matter for a hearing on the petition's merits.

PROCEDURAL HISTORY

In 2010, a jury convicted defendant of second degree murder based on his involvement in the death of Luis Rivera, which resulted after defendant took two of his friends with him to confront Rivera and Rivera's brothers about a dispute concerning a woman. What began as a yelling match, escalated into a fist fight, and ultimately resulted in one of defendant's companions shooting Rivera as defendant drove away. At trial, the prosecution pursued alternative theories of liability: (1) defendant aided and abetted the murder; (2) defendant aided and abetted the target offense of assault with a firearm, the natural and probable consequence of which was murder; and (3) defendant conspired to commit an assault with a firearm, the natural and probable consequence of which was murder. Defendant was sentenced to 15 years to life in prison. We affirmed the judgment in an unpublished decision in 2012. (*People v. Cruz* (Feb. 6, 2012, G045010).)

In January 2019, defendant filed a petition under section 1170.95, asserting he was entitled to vacation of his murder conviction and resentencing. The District

_____

[2] In *Gooden*, the constitutionality of Senate Bill 1437 was raised by the San Diego District Attorney in a petition for writ of mandate and/or prohibition filed in the Court of Appeal after the trial court had found the legislation did not amend either initiative. (*Gooden, supra*, 42 Cal.App.5th at p. 278.)

In *Lamoureux*, the defendant appealed after the trial court denied her petition on the ground that Senate Bill 1437 invalidly amended Proposition 7. (*Lamoureux, supra*, 42 Cal.App.5th at p. 246.) The opinions in *Lamoureux* and *Gooden*, finding "no constitutional infirmity with Senate Bill 1437" were filed concurrently. (*Lamoureux*, at p. 246.)

Attorney opposed defendant's petition, arguing Senate Bill 1437 amends Proposition 7 and Proposition 115 and is therefore unconstitutional. Defendant, represented by counsel, filed a reply. The court denied the petition in a written ruling, concluding Senate Bill 1437 is unconstitutional. The court did not address whether defendant was entitled to relief under section 1170.95 if the legislation is constitutional.

## DISCUSSION

The issue we must decide is whether Senate Bill 1437 is an unconstitutional amendment of either Proposition 7 or Proposition 115.

### I. GENERAL PRINCIPLES REGARDING AMENDMENT OF VOTER INITIATIVES

Under the California Constitution, a statute enacted through a voter initiative is afforded special protection that limits the Legislature's ability to modify it. Such a statute "may be changed only with the approval of the electorate unless the initiative measure itself permits amendment or repeal without voter approval." (*People v. Cooper* (2002) 27 Cal.4th 38, 44; *Proposition 103 Enforcement Project v. Quackenbush* (1998) 64 Cal.App.4th 1473, 1483-1484 (*Quackenbush*) [the Legislature may amend a statute enacted by the initiative process "only if the voters specifically gave the Legislature that power, and then only upon whatever conditions the voters attached to the Legislature's amendatory powers"].) Article II, section 10, subdivision (c), of the California Constitution states: "The Legislature may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without the electors' approval." The purpose of this "'constitutional limitation on the Legislature's power to amend initiative statutes is to "protect the people's initiative powers by precluding the Legislature from

5

undoing what the people have done, without the electorate's consent."'"'" (*Kelly, supra*, 47 Cal.4th at p. 1025.)

What constitutes an amendment in this context has been addressed by our Supreme Court. Noting "some decisions contain broad definitions" of an amendment (*Kelly, supra*, 47 Cal.4th at p. 1026), the high court, seemingly seeking to narrow the definition, indicated "[i]t is sufficient to observe that . . . an amendment includes a legislative act that changes an existing initiative statute by taking away from it." (*Id.* at pp. 1026-1027.)[3] Less than a year later, the Supreme Court "described an amendment as 'a legislative act designed to change an existing initiative statute by adding or taking from

---

[3]      Extracting language from *Quackenbush, supra*, 64 Cal.App.4th 1473, the District Attorney contends "[a] legislative statute amends an initiative statute when it changes the 'scope or effect' of an initiative." Similarly, he relies on *Mobilepark West Homeowners Assn. v. Escondido Mobilepark West* (1995) 35 Cal.App.4th 32 (*Mobilepark*) to support his argument that any change to the scope and effect of Proposition 7's initiative statutes constitutes an invalid amendment. Relying on *Quackenbush* and *Mobilepark*, he asserts Senate Bill 1437 impermissibly "changes the scope and effect of Proposition 7's mandates for first and second degree murder." The District Attorney's reliance on the "scope and effect" language in these two cases is misplaced.

      Both *Quackenbush* and *Mobilepark* define an amendment "as ""'any change of the scope or effect of an existing statute, whether by addition, omission, or substitution of provisions, which does not wholly terminate its existence, whether by an act purporting to amend, repeal, revise, or supplement, or by an act independent and original in form . . . .""'" (*Quackenbush, supra*, 64 Cal.App.4th at pp. 1484-1485, quoting *Mobilepark, supra*, 35 Cal.App.4th at p. 40.) They take this definition from *Franchise Tax Bd. v. Cory* (1978) 80 Cal.App.3d 772 at page 776. In *Kelly*, our Supreme Court described this definition in *Cory* as "broad" and "expansive" (*Kelly, supra*, 47 Cal.4th at p. 1026) and "question[ed]" whether this "broad language" conflicts with language in other decisions that "the Legislature remains free to enact laws addressing the general subject matter of an initiative, or a 'related but distinct area' of law that an initiative measure 'does not specifically authorize *or* prohibit.'" (*Id.* at p. 1026, fn. 19.) The Supreme Court concluded it "need not endorse any such expansive definition" in resolving the issue before it. (*Id.* at p. 1026.) Taking our cue from our Supreme Court, we do not endorse the definition relied upon by the District Attorney but focus on whether Senate Bill 1437 changes the statutory provisions enacted by Proposition 7 by taking away something they specifically authorized or prohibited. (*Id.* at pp. 1025-1027.)

it some particular provision.'" (*People v. Superior Court* (*Pearson*) (2010) 48 Cal.4th 564, 571 (*Pearson*).)  In *Pearson*, the Supreme Court explained that "any legislation that concerns the same subject matter as an initiative" is not necessarily an amendment. (*Ibid.*)  "[T]he Legislature remains free to enact laws addressing the general subject matter of an initiative, or a 'related but distinct area' of law that an initiative measure 'does not specifically authorize *or* prohibit.'" (*Kelly*, at p. 1026, fn. 19; accord, *Pearson*, at p. 571.)  In deciding whether legislation amends an initiative statute, a reviewing court determines whether the legislation "prohibits what the initiative authorizes, or authorizes what the initiative prohibits." (*Pearson*, at p. 571.)  This determination requires the court to "decide what the voters contemplated" in passing the initiative because the "'voters should get what they enacted, not more and not less.'" (*Ibid.*)

Determining what the voters contemplated is a matter of statutory interpretation.  "When we interpret an initiative, we apply the same principles governing statutory construction.  We first consider the initiative's language, giving the words their ordinary meaning and construing this language in the context of the statute and initiative as a whole.  If the language is not ambiguous, we presume the voters intended the meaning apparent from that language, and we may not add to the statute or rewrite it to conform to some assumed intent not apparent from that language.  If the language is ambiguous, courts may consider ballot summaries and arguments in determining the voters' intent and understanding of a ballot measure." (*Pearson, supra*, 48 Cal.4th at p. 571.)

Proposition 7 did not permit legislative amendment of its statutory provisions without voter approval.  (*People v. Cooper, supra*, 27 Cal.4th at p. 44.) Proposition 115 authorized amendment of its statutory provisions by a two-thirds vote in both houses of the Legislature.  (*Pearson, supra*, 48 Cal.4th at pp. 568-569 [citing Stats. 1990, § 30, p. A-256].)  Senate Bill 1437 was approved by two-thirds of the California

7

State Senate but not the Assembly[4] and was not submitted to voters for approval.  Thus, if Senate Bill 1437 *amends* an initiative statute approved by the voters in either Proposition 7 or Proposition 115, it violates article II, section 10, subdivision (c), of the California Constitution.

The issue of whether Senate Bill 1437 amends either initiative is a question of law we review de novo.  (*People v. Armogeda* (2015) 233 Cal.App.4th 428, 435.) "We 'start[] with the presumption that the Legislature acted within its authority.'" (*People v. DeLeon* (2017) 3 Cal.5th 640, 651.)  "'In considering the constitutionality of a legislative act we presume its validity, resolving all doubts in favor of the [a]ct.  Unless conflict with a provision of the state or federal Constitution is clear and unquestionable, we must uphold the [a]ct.'"  (*Amwest Surety Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243, 1252.)

## II.  SENATE BILL 1437 AND PROPOSITION 7

As the analysis of whether Senate Bill 1437 amends Proposition 7 turns on the language in each, we examine both.  But first, we endeavor to provide a very brief primer on murder, the natural and probable consequences doctrine, and the felony-murder rule prior to the passage of Senate Bill 1437, as these topics are central to our discussion.

### A.  *Murder*

Murder is defined as "the unlawful killing of a human being . . . with malice aforethought" (§ 187, subd. (a)) and is divided into first and second degree (§ 189).  Section 189, subdivision (a), defines first degree murder as a willful, deliberate, premeditated killing or a murder committed during the commission or attempted

---

[4]  Twenty-seven of the 40 members of the Senate and 42 of the 80 members of the Assembly voted for the bill.  (Sen. J. (2017-2018 Reg. Sess.) p. 6034; Assem. J. (2017-2018 Reg. Sess.) p. 6916; see Cal. Const., art. IV, § 2.)

8

commission of specified felonies or a "murder that is perpetrated by means of a destructive device or explosive, . . . poison, lying in wait, [or] torture . . . ."  Any murder not defined as first degree is second degree murder.  (§ 189, subd. (b).)

Section 188 defines express and implied malice for murder.  (See *People v. Chun* (2009) 45 Cal.4th 1172, 1181.)  Express malice is the manifestation of a deliberate intent to kill.  (§ 188, subd. (a)(1).)  Implied malice has been judicially interpreted "as having 'both a physical and a mental component.  The physical component is satisfied by the performance of "an act, the natural consequences of which are dangerous to life."  [Citation.]  The mental component is the requirement that the defendant "knows that his conduct endangers the life of another and . . . acts with a conscious disregard for life."'"  (*Chun,* at p. 1181.)

It is commonly understood that a defendant can be convicted of murder when he or she is the actual killer.  Perhaps less understood are theories of vicarious liability under which an accomplice who does not kill is nonetheless convicted of murder.  One of these theories is the natural and probable consequences doctrine.  Under this theory, "'"[a] person who knowingly aids and abets criminal conduct is guilty of not only the intended crime [target offense] but also of any other crime the perpetrator actually commits [nontarget offense] that is a natural and probable consequence of the intended crime."'  [Citations.]  'Thus, for example, if a person aids and abets only an intended assault, but a murder results, that person may be guilty of that murder, even if unintended, if it is a natural and probable consequence of the intended assault.'"  (*People v. Chiu* (2014) 59 Cal.4th 155, 161.)  Under the natural and probable consequences theory, it is not necessary that the prosecution prove the accomplice intended to kill another.  This is because the murder was not intended at all.  (*Id.* at p. 164.)  "'Because the [murder] is unintended, the mens rea of the aider and abettor with respect to that offense is irrelevant and culpability is imposed simply because a reasonable person could have foreseen the commission of the [murder].'"  (*Ibid.*)

9

A separate theory to support a murder conviction is the felony-murder rule. "The felony-murder rule makes a killing while committing certain felonies murder without the necessity of further examining the defendant's mental state." (*People v. Chun, supra*, 45 Cal.4th at p. 1182.) Under the felony-murder rule, "'the requisite malice for a murder conviction'" is imputed "'to those who commit a homicide during the perpetration of a felony inherently dangerous to human life.'" (*Id.* at p. 1184.) Both the actual killer and the accomplice can be convicted of murder under the felony-murder rule.

B. *Senate Bill 1437*

With Senate Bill 1437, the Legislature amended "the felony murder rule and the natural and probable consequences doctrine, as it relates to murder . . . ." (Stats. 2018, ch. 1015, § 1, subd. (f).) The Legislature explained these changes were necessary to ensure "[a] person's culpability for murder [is] premised upon that person's own actions and subjective mens rea." (*Id.*, § 1, subd. (g).)

To effectuate these desired changes, Senate Bill 1437 amended sections 188 and 189. (Stats. 2018, ch. 1015, §§ 2, 3.) The following language was added to section 188: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (*Id.*, subd. (a)(3).) Senate Bill 1437 amended section 189 by adding subdivisions (e) and (f), relating to the felony-murder rule. As amended, section 189 now reads, in pertinent part: "(a) All murder that is perpetrated by means of a destructive device or explosive, . . . poison, lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing, or that is committed in the perpetration of, or attempt to perpetrate, arson, rape, carjacking, robbery, burglary, mayhem, kidnapping, train wrecking, or any act punishable under Section 206, 286, 287, 288, or 289, or former Section 288a, or murder that is perpetrated by means of discharging a firearm from a motor vehicle, intentionally at

10

another person outside of the vehicle with the intent to inflict death, is murder of the first degree.  [¶]  (b) All other kinds of murders are of the second degree.  [¶] . . . [¶]  (e) A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven:  [¶] (1) The person was the actual killer.  [¶]  (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.  [¶]  (f) Subdivision (e) does not apply to a defendant when the victim is a peace officer who was killed while in the course of the peace officer's duties, where the defendant knew or reasonably should have known that the victim was a peace officer engaged in the performance of the peace officer's duties."

Senate Bill 1437 also added section 1170.95, providing a process by which defendants previously convicted of murder under a natural and probable consequences theory or felony murder may petition the superior court for vacation of their murder convictions and for resentencing, if they could not be convicted of murder now based on the amendments to sections 188 and 189.  (Stats. 2018, ch. 1015, § 4.)  Upon receiving a section 1170.95 petition, a court must determine whether the petitioner has made a prima facie showing of entitlement to relief.  (§ 1170.95, subd. (c).)  The prosecution is afforded an opportunity to file a response and petitioner a reply.  (*Ibid.*)  "If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."  (*Ibid.*)  Absent a stipulation by the parties that the petitioner is eligible for relief, or the parties waive the resentencing hearing (*id.*, subd. (d)(2)), the court is to hold a hearing to determine whether to vacate the petitioner's murder conviction and resentence the petitioner (*id.*, subd. (d)(1)).  If the court determines the petitioner is

11

entitled to relief, his or her murder conviction "shall be redesignated as the target offense or underlying felony for resentencing purposes." (*Id.*, subd. (e).)

C. *Proposition 7*

Proposition 7 was approved by voters in a statewide election in November 1978. The statutory changes it made can be grouped into two categories: (1) it increased the penalties for first and second degree murder by amending section 190 (Ballot Pamp., Gen. Elec. (Nov. 7, 1978) text of Prop. 7, § 1, p. 33 (Prop. 7 Pamp.)); and (2) it sought to strengthen and expand California's death penalty with amendments to sections 190.1 through 190.5 (Prop. 7 Pamp., *supra*, text of Prop. 7, §§ 3-12, pp. 33, 41-46 .)[5]

Prior to the passage of Proposition 7, a first degree murder conviction was punishable by life imprisonment with the possibility of parole after seven years.[6] A defendant convicted of second degree murder could be sentenced to five, six, or seven years in prison. Proposition 7 increased the punishment for first degree murder to life imprisonment with the possibility of parole after 25 years, and the penalty for second degree murder was increased to life imprisonment with the possibility of parole after 15 years. (Prop. 7 Pamp., *supra*, text of Prop. 7, §§ 1, 2, p. 33.)

---

[5] These changes to the death penalty, although not relevant here, expanded the list of special circumstances that would subject a defendant to the penalty of death or life without the possibility of parole and deleted the requirement that a felony murder be willful, deliberate, and premeditated. (§ 190.2; *People v. Weidert* (1985) 39 Cal.3d 836, 844.) Proposition 7 also repealed and reenacted: section 190.1 (procedure for death penalty cases); section 190.3 (evidence to be presented during the penalty phase); section 190.4 (concerns penalty phase in death penalty case); and section 190.5 (prohibiting imposition of death penalty on any person under the age of 18). (Prop. 7 Pamp., *supra*, text of Prop. 7, §§ 3-12, pp. 33, 41-46.)

[6] If a defendant was convicted of first degree murder and a special circumstance listed in section 190.2 was also proven, the penalty was death or life imprisonment without the possibility of parole.

12

D. *Senate Bill 1437 Does Not Amend Proposition 7*

When we look at the statutes repealed and reenacted by Proposition 7 and those amended by Senate Bill 1437, there is no overlap. Proposition 7 did not address sections 188 (malice) or 189 (degree of murder), which Senate Bill 1437 amends. And Senate Bill 1437 did not amend those in Proposition 7 — section 190 or sections 190.1 through 190.5. On the surface, Senate Bill 1437 does not amend Proposition 7's statutory provisions.

But we must conduct a deeper examination to determine whether Senate Bill 1437 indirectly adds to or takes away from Proposition 7's provisions. The District Attorney contends Senate Bill 1437 alters Proposition 7's penalties for murder because the legislation redefines the crime of murder by amending sections 188 and 189. We disagree. Senate Bill 1437 does not alter the penalty for murder. After the enactment of Senate Bill 1437, a first degree murder conviction still results in a penalty of life imprisonment with the possibility of parole after 25 years and a second degree murder conviction results in a penalty of life imprisonment with the possibility of parole after 15 years, as required by Proposition 7. Senate Bill 1437 does not authorize reduced sentences for such convictions. Thus, Senate Bill 1437's amendments do not take away from Proposition 7's provisions.

*In re Oluwa* (1989) 207 Cal.App.3d 439 illuminates the difference. The issue in *Oluwa* was whether the defendant, who had been convicted of second degree murder, was entitled to the benefit of more generous custody credit provisions enacted by the Legislature after Proposition 7. (*Oluwa*, at pp. 442-443.) The appellate court noted that section 190, as passed by the voters in Proposition 7, specifically referenced postsentence custody credit statutes in place at the time, acknowledging and limiting their application to the penalties for murder. (*Oluwa*, at pp. 442-445.) After the Legislature enacted the new custody credit provisions, the defendant requested they be applied against his sentence for his second degree murder. (*Id.* at p. 443.) The Court of Appeal

13

concluded such application would improperly amend "Proposition 7 by reducing the amount of time a second degree murderer must serve before being eligible for a parole hearing . . . ." (*Id.* at p. 446.)

In *Oluwa*, the new statutory provisions concerning custody credits lessened the sentence mandated by Proposition 7, thus taking away from the initiative's provisions. (*In re Oluwa, supra*, 207 Cal.App.3d at p. 446.) Here, Senate Bill 1437 does not create such a concern. Senate Bill 1437's provisions do not lessen the punishment for a first or second degree murder conviction.

What Senate Bill 1437 did do was limit accomplice liability under the natural and probable consequences doctrine and the felony-murder rule by amending sections 188 and 189. But neither of these statutory amendments changes the penalty for a murder conviction. Proposition 7 prohibits a penalty of less than 25 years to life for a defendant convicted of first degree murder or a penalty of less than 15 years to life for a defendant convicted of second degree murder. This has not changed. Because Senate Bill 1437 does not authorize what Proposition 7 prohibits, it is not an amendment of the initiative. (See *People v. Cooper, supra*, 27 Cal.4th at p. 47 [because Prop. 7 did not authorize or prohibit presentence conduct credits, limitation of presentence conduct credits in subsequent legislation was not an invalid amendment of Prop. 7].)

As discussed above, the Legislature remains free to enact laws addressing "a 'related but distinct area' of law that an initiative measure 'does not specifically authorize *or* prohibit.'" (*Kelly, supra*, 47 Cal.4th at p. 1026, fn. 19.) The District Attorney asserts that "[w]hat constitutes the crime of murder is not a distinct but related area" to the punishment of murder and therefore the Legislature lacked the authority to refine the elements of murder after the passage of Proposition 7. This assertion is unpersuasive. Although both Senate Bill 1437 and Proposition 7 address murder, each addresses a distinct aspect of murder. Senate Bill 1437 concerns the elements of murder, while Proposition 7 provides the punishment for a murder conviction. The definition of a

14

crime, or its essential elements, is related to but distinct from the delineation of the crime's punishment.

The majority in *Gooden, supra*, 42 Cal.App.5th 270 aptly pointed out this distinction. The district attorney in *Gooden*, like the District Attorney here, contended Senate Bill 1437 "'effectively change[d] the penalties for murder,' and therefore 'took away' from Proposition 7, 'by changing the very definitions [of murder] relied upon by the voters . . . .'" (*Gooden,* at p. 281.) The majority rejected this contention, indicating the district attorney was conflating two related but distinct concepts—the elements of murder and the punishment for murder. (*Ibid.*) Elucidating the difference, they noted: "''"Every crime consists of a group of elements laid down by the statute or law defining the offense and every one of these elements must exist or the statute is not violated. This group of essential elements is known as the 'corpus delicti,' the body or the elements of the crime.''" [Citation.] Punishment, however, "'has always meant a 'fine, penalty, or confinement inflicted upon a person by the authority of the law and the judgment and sentence of a court, for [the] crime or offense committed by him.'''" (*Id*. at p. 281.) They explained that while the elements of an offense and the punishment for an offense are "closely and historically related" they "are not synonymous." (*Ibid.*)

The general rule is that the Legislature has the exclusive ""'"""power to define crimes and fix penalties.""'"'" (*People v. Powell* (2018) 5 Cal.5th 921, 943.) With the passage of Proposition 7, the electorate claimed the power to fix the penalty for murder, taking it away from the Legislature. But the power to define murder and its essential elements remains with the Legislature as Proposition 7 did not address the statutes that define murder (§ 187), its malice element (§ 188), or its degrees (§ 189). It made no changes to these statutes. (Cf. *People v. Oluwa, supra*, 207 Cal.App.3d at pp. 442-445 [because § 190 in Prop. 7 specifically referenced Penal Code article concerning custody credits, article's provisions were incorporated in the initiative in the form they existed at the time Prop. 7 was approved].) Proposition 7 concerned only the penalty for

15

murder, amending section 190, a statute separate from the elements of the offense.  As Senate Bill 1437 did not amend the penalty for murder, it is not an impermissible amendment of Proposition 7.  We agree with the majority in *Gooden* that "Senate Bill 1437 presents a classic example of legislation that addresses a subject related to, but distinct from, an area addressed by an initiative" and that the Legislature was free to enact such legislation without running afoul of the California Constitution.  (*Gooden, supra*, 42 Cal.App.5th at p. 282.)

Our conclusion is further supported by our Supreme Court's decision in *Pearson, supra*, 48 Cal.4th 564.  Although *Pearson* concerned Proposition 115, its analysis of whether subsequent legislation addressed an area related to the initiative's provisions applies here.  Proposition 115 added, among other things, a new Penal Code chapter concerning discovery, which stated "that '[n]o order requiring discovery shall be made in criminal cases except as provided by this chapter.'"  (*Pearson*, at p. 567.)  In *Pearson*, the Supreme Court considered whether legislation providing for postconviction discovery in certain criminal cases was an invalid amendment of Proposition 115's discovery provisions.  (*Pearson*, at p. 567.)  After reviewing the initiative's language (*id.* at pp. 571-572), the Supreme Court determined the electorate, in passing Proposition 115, was concerned only with discovery in a criminal trial and did not intend "either to provide for or to prohibit [posttrial] discovery in a separate habeas corpus matter."  (*Id.* at pp. 572-573.)  The Supreme Court concluded the legislation "addresses an area that is *related* to Proposition 115's discovery provisions, but crucially, it is also a *distinct* area" and therefore was not an impermissible amendment of Proposition 115.  (*Id.* at p. 573.)

Similarly here, Proposition 7's language concerned only the penalty for murder, not the related but distinct issue of the elements of murder.  Contrary to the District Attorney's assertion, Proposition 7 was not all-encompassing as to both the elements of murder and its sentence.  Nothing in the plain language of Proposition 7

16

indicates the electorate intended to provide for or prohibit modification of the elements of murder.

Regardless of how the test is phrased, Senate Bill 1437 does not amend Proposition 7 as the legislation does not take away from the initiative's statutory provisions; it does not authorize what Proposition 7 prohibits or prohibit what Proposition 7 authorizes; and it addresses an area related to but distinct from Proposition 7's provisions concerning the penalty for murder. Because we conclude the language of Proposition 7 is clear and unambiguous, we need not look to its ballot pamphlet materials for indicia of the voters' intent. (*People v. Knight* (2005) 128 Cal.App.4th 14, 25.) But as each party relies on the ballot materials to support his argument, we nevertheless consider whether these materials reflect an intent by the voters to prevent the Legislature from subsequently limiting accomplice liability for murder under the natural and probable consequences doctrine or felony-murder rule.

The ballot pamphlet materials for Proposition 7 contained a summary prepared by the Attorney General, which described the initiative as follows: "Changes and expands categories of first degree murder for which penalties of death or confinement without possibility of parole may be imposed. Changes minimum sentence for first degree murder from life to 25 years to life. Increases penalty for second degree murder. Prohibits parole of convicted murderers before service of 25 or 15 year terms, subject to good-time credit." (Prop. 7 Pamp., *supra*, summary of Attorney General of Prop. 7, p. 32.)

The Legislative Analyst explained the "proposition would: (1) increase the penalties for first and second degree murder, (2) expand the list of special circumstances requiring a sentence of either death or life imprisonment without the possibility of parole, and (3) revise existing law relating to mitigating or aggravating circumstances." (Prop. 7 Pamp., *supra*, analysis of Prop. 7 by Legis. Analyst, p. 32.)

17

The "Argument in Favor of Proposition 7" focused on the need to strengthen California's death penalty to "give every Californian the protection of the nation's toughest, most effective death penalty law." (Prop. 7 Pamp., *supra*, argument in favor of Prop. 7, p. 34.) Similarly, the "Argument Against Proposition 7" focused on whether it was necessary to amend California's death penalty provisions. (Prop. 7 Pamp., *supra*, argument against Prop. 7, p. 35.)

Thus, nothing in Proposition 7's text or its ballot materials reference the elements of murder or more specifically the definition of malice in section 188, the natural and probable consequences doctrine, the felony-murder rule, or section 189. There is simply no indication that the electorate intended to prohibit subsequent legislation on these issues. The majority in *Gooden* similarly concluded that Senate Bill 1437 "cannot be considered an amendment to Proposition 7" because the text of Proposition 7 and its ballot materials "do not demonstrate an intent to freeze the substantive elements of murder in place as they existed in 1978." (*Gooden, supra*, 42 Cal.App.5th at p. 286.)

Nevertheless, relying on these ballot materials, the District Attorney asserts "[u]nder no reading of the arguments, the Legislative Analyst's discussion, or the proposition itself, did the people express a willingness or desire to permit the Legislature to re-define what is required for murder to narrow the range of offenders to which Proposition 7 would apply." But neither did the voters express the desire to prohibit the Legislature from refining the elements of murder or limiting accomplice liability under the natural and probable consequences doctrine or the felony-murder rule. The issue simply was not presented to the people. Neither the plain language of Proposition 7 nor its ballot materials included any restriction on the Legislature's ability to define murder, malice, or the felony-murder rule. Proposition 7 voters did not contemplate accomplice liability for murder under a natural and probable consequences theory or the felony-murder rule. Proposition 7 therefore cannot be interpreted in a manner that restricts the

18

Legislature's authority to limit accomplice liability under the natural and probable consequence doctrines or the felony-murder rule. (See *Knight v. Superior Court*, *supra*, 128 Cal.App.4th at p. 18 [court "precluded from interpreting Proposition 22 in a manner that was not presented to the voters"].) While the electorate's views on the penalty for murder must be respected, we cannot read more into the voters' intent.

For the foregoing reasons, we conclude Senate Bill 1437 is not an unconstitutional amendment of Proposition 7. We reach the same conclusion in *People v. Solis, supra*, __ Cal.App.5th __, after reviewing the ballot materials for Proposition 7 and employing a similar analysis.

### III.  SENATE BILL 1437 DOES NOT AMEND PROPOSITION 115

We likewise conclude Senate Bill 1437 is not an unconstitutional amendment of Proposition 115. To determine what the voters contemplated with the passage of Proposition 115, we begin by looking at the initiative's language.

Proposition 115 made several changes to criminal law and procedure when passed by voters in 1990. (*People v. Banks* (2015) 61 Cal.4th 788, 794.) Pertinent here is its amendment to section 189, wherein it added five more serious felonies (kidnapping, train wrecking, and three sex offenses [§§ 286, 288a, & 289]) to the list of felonies for first degree felony-murder liability. (Ballot Pamphlet, Primary Elec. (June 5, 1990) text of Prop. 115, § 9, p. 66 (Prop. 115 Pamp.).) The "Analysis by the Legislative Analyst" informed voters that among the "numerous significant and complex changes" Proposition 115 would make to criminal law, it would expand "the definition of first-degree murder to include murder committed during the commission or attempted commission of additional serious crimes." (Prop. 115 Pamp., *supra*, analysis of Prop. 115 by Legis. Analyst, p. 32.) The arguments for and against Proposition 115 in the ballot materials did not address the addition of these crimes to first degree murder.

19

Proposition 115 also "revised the scope of capital liability for aiding and abetting felony murders" by amending section 190.2 to indicate that for first degree felony murder "'every person, not the actual killer, who, with reckless indifference to human life and as a major participant' aids or abets the crime may be convicted of special circumstance murder." (*People v. Banks, supra*, 61 Cal.4th at p. 798.)

The language Senate Bill 1437 added to section 189 mimics that added to section 190.2 by Proposition 115. As noted above, Senate Bill 1437 added subdivision (e) to section 189, stating that "[a] participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (Stats. 2018, ch. 1015, § 3.)

The District Attorney contends Senate Bill 1437 "substantially changed" section 189 because it imposes restrictions on the application of the first degree felony-murder rule to accomplices and therefore constitutes an improper amendment of Proposition 115. We disagree. The only change made to section 189 by Proposition 115 was the addition of five serious felonies to the list of predicate felonies for first degree felony-murder liability. That is all the electorate voted on in this regard. The voters were not asked to consider the circumstances under which an aider and abettor should be liable for first degree felony murder. While the Legislature cannot remove Proposition 115's five felonies from the list for first degree felony-murder liability, it can limit liability for accomplices under the felony-murder rule.

With the passage of Proposition 115, voters did consider capital liability for aiding and abetting felony murders. (See *People v. Banks, supra*, 61 Cal.4th at pp. 794,

797-798.)  The District Attorney contends that because Proposition 115 addressed accomplice liability in death penalty cases, the Legislature was not free to address accomplice liability for first degree felony murder in Senate Bill 1437.  We are not persuaded.  Accomplice liability for first degree murder in section 189 is an area of law related to but distinct from accomplice liability in special circumstance murder in section 190.2.  As Proposition 115 did not specifically authorize or prohibit restrictions on the application of the first degree felony-murder rule to accomplices, Senate Bill 1437 did not improperly amend Proposition 115 by adding such restrictions to felony murder in section 189.

The District Attorney also argues that language in Proposition 115 prohibiting amendment to its "'*statutory provisions*'" has greater significance than the commonly used language that amendment of an initiative's "'provisions'" is prohibited.  He asserts the "'statutory provisions'" language in Proposition 115 indicates the "voters wanted to prevent the Legislature from amending any of *the specific statutes* included in the initiative, without regard to how much of the language of the statute was changed and regardless of the general rule" "that mere restatement of existing language in a statute as required by the [California] Constitution [citation] does not prevent legislative amendment . . . ."  We do not import such meaning into the fact Proposition 115 states its "statutory provisions" rather than its "provisions" shall not be amended absent certain circumstances.  To us, it appears to be a distinction without a difference.

Thus as to Proposition 115, we reach the same conclusion as the majority in *Gooden* that "Senate Bill 1437 did not amend Proposition 115."  (*Gooden, supra*, 42 Cal.App.5th at p. 286.)  In *People v. Solis*, *supra*, __ Cal.App.5th __, we likewise conclude Senate Bill 1437 does not amend Proposition 115 and is consistent with its goals.

21

DISPOSITION

The order denying defendant's petition for resentencing (§ 1170.95) on the ground that Senate Bill 1437 is unconstitutional is reversed and the matter is remanded for further proceedings on the merits of defendant's petition.


IKOLA, J.

WE CONCUR:


O'LEARY, P. J.


FYBEL, J.

22