Filed 3/18/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
|    Plaintiff and Respondent, | G057510 |
|      v. | (Super. Ct. No. 94SF0029) |
| ROGELIO VASQUEZ SOLIS, | O P I N I O N |
|    Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, Cheri T. Pham, Judge. Reversed and remanded.

Richard A. Levy, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Thomas S. Patterson, Assistant Attorney General, Tamar Pachter and Nelson R. Richards, Deputy Attorneys General, as amicus curiae on behalf of Defendant and Appellant.

Todd Spitzer, District Attorney, and Seton B. Hunt, Deputy District Attorney, for Plaintiff and Respondent.

\*       \*       \*

Senate Bill No. 1437, enacted in 2018, amended Penal Code sections 188 and 189, and added section 1170.95.  (Stats. 2018, ch. 1015, §§ 2-4.)  (All further statutory references are to the Penal Code, unless otherwise indicated.)  The intent of the legislation was to limit application of the felony murder rule and murder based on the natural and probable consequences doctrine by modifying the mens rea element of those crimes.  The legislation also created a procedure by which a defendant previously convicted of murder under either of those theories could file a petition for resentencing.

Defendant Rogelio Vasquez Solis, who had been convicted of second degree murder based on the doctrine of natural and probable consequences, filed such a petition.  The Orange County District Attorney opposed defendant's petition on the ground Senate Bill No. 1437 unconstitutionally amended two voter-approved initiatives.  The trial court agreed and denied the petition.  For the reasons we shall explain, we hold that Senate Bill No. 1437 is constitutional.  *People v. Cruz* (Mar. 18, 2020, G057564) ___ Cal.App.5th ___, filed concurrently with this opinion, reaches the same conclusion based on similar reasoning.

Legislation unconstitutionally amends an initiative statute if it changes that statute """"by adding or taking from it some particular provision."""  (*People v. Superior Court (Gooden)* (2019) 42 Cal.App.5th 270, 279 (*Gooden*), quoting *People v. Superior Court (Pearson)* (2010) 48 Cal.4th 564, 570-571 (*Pearson*).)  Legislation may address the same subject matter as an initiative, and may even augment the provisions of an initiative, without amending it.  The key to our analysis is determining "'whether [the legislation] prohibits what the initiative authorizes, or authorizes what the initiative prohibits.'"  (*Gooden, supra*, at pp. 279-280.)

Senate Bill No. 1437 addresses the *elements* of the crime of murder and is directed to the mental state and conduct of those accused of murder.  (Stats. 2018, ch. 1015, § 1(f), (g).)  It does not authorize anything the two initiatives prohibited, nor

2

prohibit anything they authorized. Senate Bill No. 1437 neither adds any particular provision to nor subtracts any particular provision from either initiative.

We reverse the trial court's order and direct the trial court to consider the merits of defendant's petition.

## STATEMENT OF FACTS[1]

In 1993, a confrontation occurred at a state beach in San Clemente. Members of the San Clemente Vario Chico (SCVC) gang threw a variety of objects at a vehicle in which the victim was riding. One of the objects, a paint roller handle, struck the victim in the head, causing his death. Both defendant and his codefendant identified other SCVC gang members as having thrown paint rollers and having boasted about hurting someone. Various painting materials, including a cover for a paint roller, were recovered from the codefendant's vehicle by police after the attack. Members of the victim's group saw SCVC gang members "celebrating and 'high-fiving' each other" after the attack.

At trial, a gang expert testified the confrontation was gang-related, and that defendant and his codefendant were both SCVC gang members. Defendant denied being an SCVC gang member, but admitted he associated with the gang. Defendant admitted throwing a rock at the vehicle in which the victim was riding, but claimed he was acting in self-defense because the vehicle was approaching at a high speed.

## PROCEDURAL HISTORY

In 1997, a jury convicted defendant of second degree murder (§ 187, subd. (a)) and various other crimes. The jury found true gang sentencing enhancement allegations for all counts. (§ 186.22, subd. (b).) The trial court sentenced defendant to prison for 15 years to life for second degree murder, and either imposed concurrent terms or stayed imposition of sentence on all other counts and enhancements. Defendant

---

[1] The facts are taken from this court's unpublished opinion, *People v. Penuelas and Solis* (Oct. 14, 1999, G021570).

3

appealed from the judgment. A panel of this court affirmed in an unpublished opinion, concluding in relevant part that there was sufficient evidence defendant aided and abetted the second degree murder of the victim based on the doctrine of natural and probable consequences. (*People v. Penuelas and Solis, supra*, G021570.)

In December 2018, defendant, in propria person, filed a petition for resentencing pursuant to section 1170.95. The District Attorney filed opposition to the petition; through appointed counsel, defendant filed a written reply. The trial court denied the petition on the ground Senate Bill No. 1437 was unconstitutional; the court did not address the District Attorney's alternative argument that defendant was statutorily ineligible for relief under section 1170.95. The court concluded that Senate Bill No. 1437 "materially amends Penal Code § 190 as enacted by the electorate via Proposition 7 in a manner inconsistent with the electorate's intent and without the electorate's approval," and "materially amends Penal Code § 189 and § 190.2, as amended by the electorate via Proposition 115, in a manner inconsistent with the electorate's intent and without the required two-thirds majority of both houses of the California Legislature." (Boldface, underscoring, and some capitalization omitted.) Defendant timely filed a notice of appeal from the postjudgment order.

## DISCUSSION

### I.

#### STANDARD OF REVIEW

We review questions regarding the constitutionality of a statute de novo. (*Stennett v. Miller* (2019) 34 Cal.App.5th 284, 290.)

"[I]n resolving a legal claim, a court should speak as narrowly as possible and resort to invalidation of a statute only if doing so is necessary." (*People v. Kelly* (2010) 47 Cal.4th 1008, 1047.) "Courts should exercise judicial restraint in passing upon the acts of coordinate branches of government; the presumption is in favor of constitutionality, and the invalidity of the legislation must be clear before it can be

4

declared unconstitutional." (*Dittus v. Cranston* (1959) 53 Cal.2d 284, 286.) "[O]ne of the fundamental principles of our constitutional system of government is that a statute, once duly enacted, 'is presumed to be constitutional. Unconstitutionality must be clearly shown, and doubts will be resolved in favor of its validity.'" (*Lockyer v. City and County of San Francisco* (2004) 33 Cal.4th 1055, 1086.) The power to define crimes is vested in the Legislature. (*People v. Powell* (2018) 5 Cal.5th 921, 943.)

II.

*LIMITATIONS ON THE LEGISLATURE'S ABILITY TO AMEND A VOTER-APPROVED INITIATIVE*

A statute enacted by voter initiative may be amended or repealed by the Legislature only with the approval of the electorate, unless the initiative statute otherwise provides. (Cal. Const., art. II, § 10, subd. (c).) "'[T]he purpose of California's constitutional limitation on the Legislature's power to amend initiative statutes is to "protect the people's initiative powers by precluding the Legislature from undoing what the people have done, without the electorate's consent."'" (*People v. Kelly, supra*, 47 Cal.4th at p. 1025; see *Gooden, supra*, 42 Cal.App.5th at p 279.)

For purposes of article II, section 10 of the California Constitution, legislation amends an initiative if it "'"'change[s] an existing initiative statute by adding or taking from it some particular provision.'"'" (*Gooden, supra*, 42 Cal.App.5th at p. 279, quoting *Pearson, supra*, 48 Cal.4th at p. 571.) "[T]his does not mean that any legislation that concerns the same subject matter as an initiative, or even augments an initiative's provisions, is necessarily an amendment for these purposes. 'The Legislature remains free to address a "'related but distinct area'" [citations] or a matter that an initiative measure "does not specifically authorize *or* prohibit."' [Citations.] In deciding whether this particular provision amends Proposition 115, we simply need to ask whether it

5

prohibits what the initiative authorizes, or authorizes what the initiative prohibits." (*Pearson, supra,* at p. 571; see *Gooden, supra*, at pp. 279-280.)[2]

In determining whether the Legislature has amended a voter initiative, we have a duty to guard the people's initiative power and to liberally construe it whenever it is challenged to ensure a voter initiative is not improperly annulled. (*Estate of Claeyssens* (2008) 161 Cal.App.4th 465, 470-471.) Doubts should be resolved in favor of the initiative power. (*Id.* at p. 471.) Legislative amendments that conflict with the subject matter of a statute enacted by voter initiative must be approved by the voters unless the original initiative permits the Legislature to take such action on its own. (*Ibid.*; see Cal. Const., art. II, § 10, subd. (c).) However, the court should not read into an initiative an "undisclosed objective . . . that was not presented to the voters." (*Knight v. Superior Court* (2005) 128 Cal.App.4th 14, 18.)

III.

*RELEVANT INITIATIVES AND LEGISLATION*

**A. Proposition 7**

Proposition 7 was approved by the voters in 1978. The initiative increased the penalties for first and second degree murder (Ballot Pamp., Gen. Elec. (Nov. 7, 1978) text of Prop. 7, § 2, p. 33 (Prop. 7 Pamphlet)), expanded the list of special circumstances

---

[2] The District Attorney cites *Proposition 103 Enforcement Project v. Quackenbush* (1998) 64 Cal.App.4th 1473 (*Quackenbush*) and *Mobilepark West Homeowners Assn. v. Escondido Mobilepark West* (1995) 35 Cal.App.4th 32 (*Mobilepark West*) for the standard that an amendment is """"any change of the scope or effect of an existing statute, whether by addition, omission, or substitution of provisions, which does not wholly terminate its existence, whether by an act purporting to amend, repeal, revise, or supplement, or by an act independent and original in form."""" (*Quackenbush, supra,* at pp. 1484-1485; *Mobilepark West, supra,* at p. 40.) This language was taken from *Franchise Tax Bd. v. Cory* (1978) 80 Cal.App.3d 772, 776-777. In *People v. Kelly, supra*, 47 Cal.4th at page 1026, the California Supreme Court declined to "endorse any such expansive definition" of the term "amendment." Therefore, the cases in which the appellate court concluded a statute constituted an amendment based on an "expansive definition" of amendment are of less precedential value to our analysis.

6

requiring that a defendant convicted of first degree murder be sentenced to death or life imprisonment without the possibility of parole (*id.*, text of Prop. 7, § 6, pp. 42-43), and provided that if aggravating circumstances outweighed mitigating circumstances, the jury must return a sentence of death (*id.*, text of Prop. 7, § 8, pp. 43-44).

Proposition 7 did not authorize amendment by the Legislature without voter approval. (*People v. Cooper* (2002) 27 Cal.4th 38, 44 (*Cooper*).)

## B. Proposition 115

Proposition 115 expanded the definition of first degree murder by amending section 189 to include murders occurring during the commission or attempted commission of kidnapping, train wrecking, or any act punishable under sections 286, 288, 288a, or 289. (Ballot Pamp., Primary Elec. (June 5, 1990) text of Prop. 115, § 9, p. 66 (Prop. 115 Pamphlet).)

Proposition 115 also increased the number of underlying crimes to which the felony murder rule would apply. Proposition 115 amended section 190.2 to require a sentence of death or life in prison without the possibility of parole for a person who is not the actual killer as follows: "(c) Every person, not the actual killer, who, with the intent to kill, aids, abets, counsels, commands, induces, solicits, requests, or assists any actor in the commission of murder in the first degree shall suffer death or confinement in state prison for a term of life without the possibility of parole, in any case in which one or more of the special circumstances enumerated in subdivision (a) of this section has been found to be true under Section 190.4. [¶] (d) Notwithstanding subdivision (c), every person, not the actual killer, who, with reckless indifference to human life and as a major participant, aids, abets, counsels, commands, induces, solicits, requests, or assists in the commission of a felony enumerated in paragraph (17) of subdivision (a) which felony results in the death of some person or persons, who is found guilty of murder in the first degree therefor, shall suffer death or confinement in state prison for life without the possibility of parole if a special circumstance enumerated in paragraph (17) of

7

subdivision (a) has been found to be true under Section 190.4." (Prop. 115 Pamphlet, *supra*, text of Prop. 115, § 10, p. 66.)

Proposition 115 specifically permitted amendment by the Legislature, but only if approved by a supermajority of both houses. (Prop. 115 Pamphlet, *supra*, text of Prop. 115, § 30, p. 69.)

### C. Felony Murder/Natural and Probable Consequences Doctrine

Malice is generally an essential element of the crime of murder. (§ 187, subd. (a).) Malice is express "when there is manifested a deliberate intention to unlawfully take away the life of a fellow creature" (§ 188, subd. (a)(1)), and implied "when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart" (*id.*, subd. (a)(2)). Implied malice has both physical and mental components. (*People v. Chun* (2009) 45 Cal.4th 1172, 1181.) The physical component is the performance of an act having natural consequences that are dangerous to life. (*Ibid.*) The mental component is established when the defendant knows his or her conduct endangers another person's life yet acts with a conscious disregard for life. (*Ibid.*)

In California, the felony murder rule and the natural and probable consequences doctrine have existed as exceptions to the requirement of malice as an element of murder. "The felony-murder rule makes a killing while committing certain felonies murder without the necessity of further examining the defendant's mental state. . . . First degree felony murder is a killing during the course of a felony specified in section 189, such as rape, burglary, or robbery. Second degree felony murder is 'an unlawful killing in the course of the commission of a felony that is inherently dangerous to human life but is not included among the felonies enumerated in section 189.'" (*People v. Chun, supra,* 45 Cal.4th at p. 1182.)

"The natural and probable consequences doctrine is based on the principle that liability extends to reach 'the actual, rather than the planned or "intended" crime,

8

committed on the *policy* [that] . . . aiders and abettors should be responsible for the criminal *harms* they have naturally, probably, and foreseeably put in motion.'" (*People v. Chiu* (2014) 59 Cal.4th 155, 164.) "'By its very nature, aider and abettor culpability under the natural and probable consequences doctrine is not premised upon the intention of the aider and abettor to commit the nontarget offense because the nontarget offense was not intended at all. It imposes vicarious liability for any offense committed by the direct perpetrator that is a natural and probable consequence of the target offense. [Citation.] Because the nontarget offense is unintended, the mens rea of the aider and abettor with respect to that offense is irrelevant and culpability is imposed simply because a reasonable person could have foreseen the commission of the nontarget crime.'" (*Ibid.*)

### D. Senate Bill No. 1437

The stated purpose of Senate Bill No. 1437 was to reform the law relating to the felony murder rule and the natural and probable consequences doctrine: "It is necessary to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, §1(f).)

Senate Bill No. 1437 amended sections 188 and 189, and added section 1170.95. (Stats. 2018, ch. 1015, §§ 2-4.) Section 188 was amended to add: "[I]n order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3); Stats. 2018, ch. 1015, § 2.) Section 189 was amended to add, as subdivision (e): "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was

not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.  [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e); Stats. 2018, ch. 1015, § 3.)[3]

Finally, section 1170.95 provided a procedure by which a defendant convicted of felony murder or murder under a natural and probable consequences theory can seek to have the conviction vacated.  (§ 1170.95; Stats. 2018, ch. 1015, § 4.)

Senate Bill No. 1437 was approved by a simple majority of the California Legislature, not by two-thirds of both houses.  (*Gooden, supra*, 42 Cal.App.5th at p. 277.)

IV.

*SENATE BILL NO. 1437 DOES NOT UNCONSTITUTIONALLY AMEND PROPOSITION 7.*

The District Attorney contends Senate Bill No. 1437 unconstitutionally amends Proposition 7, which increased the penalties for the crime of murder, by redefining the crime of murder and changing who can be punished for felony murder and murder under the natural and probable consequences doctrine.  Defendant and the Attorney General contend that Proposition 7 did not establish or fix the elements of murder and therefore does not prohibit the Legislature from revising the elements of that crime.  The first step in this court's analysis is to determine what Proposition 7 did and did not do.

"When we interpret an initiative, we apply the same principles governing statutory construction.  We first consider the initiative's language, giving the words their ordinary meaning and construing this language in the context of the statute and initiative

---

[3]  Senate Bill No. 1437 also added a provision that the language of section 189, subdivision (e) would not apply if the defendant knew or reasonably should have known the murder victim was a peace officer killed in the course of performing his or her duties. (§ 189, subd. (f); Stats. 2018, ch. 1015, § 3.)  This subdivision is inapplicable to any party's argument on appeal.

10

as a whole.  If the language is not ambiguous, we presume the voters intended the meaning apparent from that language, and we may not add to the statute or rewrite it to conform to some assumed intent not apparent from that language.  If the language is ambiguous, courts may consider ballot summaries and arguments in determining the voters' intent and understanding of a ballot measure." (*Pearson, supra,* 48 Cal.4th at p. 571.)

Proposition 7 repealed and replaced sections 190 through 190.5.  (Prop. 7 Pamphlet, *supra*, text of Prop. 7, §§ 1-12, pp. 33, 41-46.)  Senate Bill No. 1437 amended sections 188 and 189, and added section 1170.95.  (Stats. 2018, ch. 1015, §§ 2-4.)  Senate Bill No. 1437 therefore does not directly amend or modify the statutory changes effected by Proposition 7.  We therefore consider whether Senate Bill No. 1437 nevertheless amends the voters' overarching intent in approving Proposition 7.

Ballot arguments submitted by the supporters of a voter initiative may be considered in establishing the voters' intent.  (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 16.)  The argument in favor of Proposition 7 read as follows:

"CHARLES MANSON, SIRHAN SIRHAN, THE ZODIAC KILLER, THE SKID-ROW SLASHER, THE HILLSIDE STRANGLER.

"These infamous names have become far too familiar to every Californian. They represent only a small portion of the deadly plague of violent crime which terrorizes law-abiding citizens.

"Since 1972, the people have been demanding a tough, effective death penalty law to protect our families from ruthless killers.  But, every effort to enact such a law has been thwarted by powerful anti-death penalty politicians in the State Legislature.

"In August of 1977, when the public outcry for a capital punishment law became too loud to ignore, the anti-death penalty politicians used their influence to make sure that the death penalty law passed by the State Legislature was as weak and ineffective as possible.

11

"That is why 470,000 concerned citizens signed petitions to give you the opportunity to vote on this new, tough death penalty law.

"Even if the President of the United States were assassinated in California, his killer would not receive the death penalty in some circumstances. Why? Because the Legislature's weak death penalty law does not apply. Proposition 7 would.

"If Charles Manson were to order his family of drug-crazed killers to slaughter your family, Manson would not receive the death penalty. Why? Because the Legislature's death penalty law does not apply to the mastermind of a murder such as Manson. Proposition 7 would.

"And, if you were to be killed on your way home tonight simply because the murderer was high on dope and wanted the thrill, that criminal would not receive the death penalty. Why? Because the Legislature's weak death penalty law does not apply to every murderer. Proposition 7 would.[4]

"Proposition 7 would also apply to the killer of a judge, a prosecutor, or a fireman. It would apply to a killer who murders a citizen in cold blood because of his race or religion or nationality. And, it would apply to all situations which are covered by our current death penalty law.

"In short, your YES vote on Proposition 7 will give every Californian the protection of the nation's toughest, most effective death penalty law.

"A long and distinguished list of judges and law enforcement officials have agreed that Proposition 7 will provide them with a powerful weapon of deterrence in their war on violent crime.

---

[4]  California courts have held the assertion that Proposition 7 would apply the death penalty to every murderer was "merely hyperbole" (*Domino v. Superior Court* (1982) 129 Cal.App.3d 1000, 1010), "political rhetoric" (*Carlos v. Superior Court* (1983) 35 Cal.3d 131, 143, fn. 11, overruled on another ground in *People v. Anderson* (1987) 43 Cal.3d 1104, 1147), or a "'misconstruction of the ballot arguments'" (*People v. Duff* (2014) 58 Cal.4th 527, 568-569).

12

"Your YES vote on Proposition 7 will help law enforcement officials to stop violent crime—NOW." (Prop. 7 Pamphlet, *supra*, p. 34.)

The voters' stated intent in enacting Proposition 7 was to expand and strengthen the death penalty. Does the language of Senate Bill No. 1437 modify or amend this intent?

Two cases, one in which the court concluded a later legislative action unconstitutionally amended Proposition 7 and one concluding such an action did not, are relevant to our decisionmaking process here. In *In re Oluwa* (1989) 207 Cal.App.3d 439, 445-446 (*Oluwa*), the court concluded that a legislative revision increasing the availability of work time credits to reduce inmate sentences was an unconstitutional amendment to Proposition 7. Proposition 7 specifically stated that then-existing custody credit statutes applied to the fixed portion of a life term for murder. (Prop. 7 Pamphlet, *supra*, text of Prop. 7, § 2, p. 33.) At the time, the Penal Code permitted prisoners to reduce their sentences "by a maximum one-third for good behavior and participation in prison programs." (*Oluwa, supra*, at p. 442.) The Legislature later enacted sections 2933 and 2934, which allowed prisoners to earn a reduction of up to one-half their sentences for work, training, and education programs. (*Oluwa, supra*, at p. 443.)

The petitioner, who was serving a 15-years-to-life term, claimed he was entitled to earn custody credits under the more generous terms of section 2933 and 2934. The appellate court held that allowing the petitioner the credits he sought under the newly enacted statutes "would permit the Legislature to amend the provisions of Proposition 7 by reducing the amount of time a second degree murderer must serve before being eligible for a parole hearing without submitting that matter to the voters." (*Oluwa, supra*, 207 Cal.App.3d at p. 446.) The court specifically noted that in passing Proposition 7, the electorate intended that a person sentenced to 15 years to life would have to serve a minimum of 10 years before becoming eligible for parole. (*Oluwa, supra*, at p. 445.)

13

In *Cooper, supra*, 27 Cal.4th at page 41, the defendant was convicted of second degree murder and sentenced to 15 years to life. The trial court limited the defendant's presentence conduct credits to 15 percent of the actual time served, pursuant to section 2933.1, subdivision (c), which was enacted by the Legislature after Proposition 7. (*Cooper, supra*, at p. 41.) The defendant argued, and the court of appeal agreed, the 15 percent limitation on custody credit was an unconstitutional amendment of Proposition 7, despite the fact it "does not directly contradict the intention of the electorate in approving [Proposition 7]." (*Cooper, supra*, at pp. 41, 45.) The Supreme Court disagreed and held "because former section 190 [as amended by Proposition 7] does not specifically authorize *or* prohibit presentence conduct credits, any limitation of such credits against defendant's sentence . . . is not an invalid modification of [Proposition 7]." (*Id.* at p. 47.)

Neither *Oluwa* nor *Cooper* involved the statutes directly addressed by Proposition 7. In both cases, the courts therefore considered whether the later legislative actions would indirectly amend Proposition 7 by being inconsistent with the voters' intent in approving Proposition 7. In *Oluwa*, the legislation was determined to be contrary to the voters' intent, while in *Cooper* it was not. The key factor was *not* whether defendants must serve the greatest sentence possible; both involved statutes under which defendants were entitled to accumulate credits that would apply against their total sentences. Rather, the courts looked to whether the later legislation was "inconsistent" with the initiative or "otherwise circumvent[ed] the intent of the electorate." (*Cooper, supra*, 27 Cal.4th at p. 48.)

Proposition 7 provided greater *penalties* for those convicted of murder and increased the number of special circumstances that could form the basis of a sentence of death or life in prison without parole. In contrast, Senate Bill No. 1437 changed the *elements* of murder by limiting the circumstances in which malice can be implied, thereby restricting the application of the felony murder rule and the natural and probable

14

consequences doctrine. Senate Bill No. 1437 is neither inconsistent with Proposition 7, nor does it circumvent the electorate's intent.

The definition of a crime is distinct from the punishment for a crime. (*People v. Anderson* (2009) 47 Cal.4th 92, 119 [a "penalty provision is not an element of an offense under California law"].) Every crime consists of a group of essential elements, known as the corpus delecti, that are created by statute or law. (*Id.* at p. 101.) These elements define the crime, and each element must be proven to establish an offense. (*Ibid.*) Punishment is not an element of a crime but is the penalty imposed by judgment of a court of law on a person for committing a crime, which penalty may include death, confinement, or a fine, among other things. (*People v. Ruiz* (2018) 4 Cal.5th 1100, 1107.)

Proposition 7 unquestionably dealt with punishment for crime (specifically, murder), while Senate Bill No. 1437 unquestionably addresses a factual element of crime (specifically, the mens rea for murder). Senate Bill No. 1437 does not affect the goal of increasing the use of the death penalty as a deterrent to violent crime. Senate Bill No. 1437 uses the same criteria in determining that an individual may not be prosecuted for felony murder as section 190.2 uses in determining whether a person convicted of felony murder may be subject to the penalty of death. (Compare § 189, subd. (e) with § 190.2, subds. (c), (d).) In other words, individuals spared prosecution for felony murder and murder based on the natural and probable consequences doctrine under Senate Bill No. 1437 would not have been subject to the death penalty under Proposition 7. Senate Bill No. 1437 has no effect on the imposition of the death penalty and therefore does not unconstitutionally amend Proposition 7.

V.

*SENATE BILL NO. 1437 DOES NOT UNCONSTITUTIONALLY AMEND PROPOSITION 115.*

Proposition 115 amended section 189 by adding more crimes to the list of felonies that bring the felony murder rule into play. (Prop. 115 Pamphlet, *supra*, § 9,

15

p. 66.)  Senate Bill No. 1437 amended section 189 by adding subdivision (e), limiting liability under the felony murder rule and the natural and probable consequences doctrine by requiring proof of actual malice as an element of those crimes.  Senate Bill No. 1437 also amended section 188 (which Proposition 115 had left untouched) by requiring proof of malice aforethought to convict an individual of murder, and prohibiting the imputation of malice based solely on an individual's participation in a crime.  (Stats. 2018, ch. 1015, § 2.)  Because Senate Bill No. 1437 prohibits imputation of malice to those who are not the actual killer, the District Attorney argues that it amends Proposition 115.

Before the enactment of Proposition 115, section 189 read, in relevant part: "All murder which is . . . committed in the perpetration of, or attempt to perpetrate, arson, rape, carjacking, robbery, burglary, mayhem, or any act punishable under Section 288, is murder of the first degree; and all other kinds of murders are of the second degree." (Former § 189, as amended by Stats. 1982, ch. 950, § 1.)  Proposition 115 added kidnapping (§ 207), train wrecking (§ 218), sodomy (§ 286), oral copulation (former § 288a), and penetration by a foreign object (§ 289) to the list of underlying crimes in section 189 leading to criminal liability for first degree murder.  (Prop. 115 Pamphlet, *supra*, text of Prop. 115, § 9, p. 66.)  Section 189 was subsequently amended to add other underlying crimes to that list, including torture and discharging a firearm from inside a vehicle at a person outside the vehicle.  (See § 189, subd. (a).)

Senate Bill No. 1437 added subdivision (e) to section 189, reading as follows:

"(e) A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven:

"(1) The person was the actual killer.

16

"(2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.

"(3) The person was a major participant in the underlying felony and acted with reckless indifference to human life."

Section 188 refers directly to section 189, subdivision (e): "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

Senate Bill No. 1437 therefore limits liability for felony murder and murder under the natural and probable consequences doctrine to an individual who is the actual killer, or who had the intent to kill and undertook specific actions to assist in the commission of the murder, or who was a major participant in the underlying felony and acted with reckless indifference to human life. These limitations do not directly modify or amend the language of Proposition 115.

The District Attorney argues that the goals of Proposition 115, as set forth in the voter guide, show that Senate Bill No. 1437 amends Proposition 115. The District Attorney quotes the following from section 1 of the text of Proposition 115:

"(a) We the people of the State of California hereby find that the rights of crime victims are too often ignored by our courts and by our State Legislature, that the death penalty is a deterrent to murder, and that comprehensive reforms are needed in order to restore balance and fairness to our criminal justice system.

"(b) In order to address these concerns and to accomplish these goals, we the people further find that is it necessary to reform the law as developed in numerous California Supreme Court decisions and as set forth in the statutes of this state. These decisions and statutes have unnecessarily expanded the rights of accused criminals far beyond that which is required by the United States Constitution, thereby unnecessarily

17

adding to the costs of criminal cases, and diverting the judicial process from its function as a quest for truth.

"(c) The goals of the people in enacting this measure are to restore balance to our criminal justice system, to create a system in which violent criminals receive just punishment, in which crime victims and witnesses are treated with care and respect, and in which society as a whole can be free from the fear of crime in our homes, neighborhoods, and schools." (Prop. 115 Pamphlet, *supra*, text of Prop. 115, § 1(a)-(c), p. 33.)

The modifications to the statutes by Senate Bill No. 1437 apply only to a defendant who is not the actual killer of a murder victim, did not act with the intent to kill, and did not act with reckless indifference to human life while committing one of the specified felonies, resulting in death to the victim. The legislation does not prevent violent criminals from receiving justice. It does not disrespect the victims of crime or witnesses to crime. It *does*, however, seek to restore balance to the justice system by ensuring that those who commit crimes are punished according to their own culpability. Therefore, Senate Bill No. 1437 is consistent with Proposition 115, and does not unconstitutionally amend it.

The District Attorney points out that Proposition 115 added section 190.2, subdivisions (c) and (d), which collectively impose the penalty of death or life imprisonment without the possibility of parole on those who are accomplices to first degree murder if one or more specific elements are found to be true. (As noted *ante*, those elements are that the accomplice act with the intent to kill, or act with reckless indifference to human life while being a major participant in the crime.) According to the District Attorney, Senate Bill No. 1437 unconstitutionally amends Proposition 115 by requiring one or more of those same elements to be found true simply to find an accomplice guilty of murder.

18

The District Attorney's argument is without merit. First, it would forever limit the use of specific language in any statute after its use in an initiative, in contravention of existing California law. (*People v. Cooper, supra*, 27 Cal.4th at p. 44 ["'"[T]here is a cognate rule, recognized as applicable to many cases, to the effect that where the reference is general instead of specific, such as a reference to a system or body of laws or to the general law relating to the subject in hand, the referring statute takes the law or laws referred to not only in their contemporary form, but also as they may be changed from time to time, and . . . as they may be subjected to elimination altogether by repeal."'"].) Second, as addressed fully *ante*, the definition of a crime and the punishment for a crime are separate and distinct matters.

The District Attorney also argues that because Proposition 115 reenacted section 189 in full, the Legislature was prohibited from later amending any portion of that statute by simple majority. If any part of a statute is amended, the entire statute must be reenacted by law. (Cal. Const., art. IV, § 9; *County of San Diego v. Commission on State Mandates* (2018) 6 Cal.5th 196, 206.) "When technical reenactments are required under article IV, section 9 of the Constitution—yet involve no substantive change in a given statutory provision—the Legislature in most cases retains the power to amend the restated provision through the ordinary legislative process. This conclusion applies *unless* the provision is integral to accomplishing the electorate's goals in enacting the initiative or other indicia support the conclusion that voters reasonably intended to limit the Legislature's ability to amend that part of the statute. This interpretation of article II of the Constitution is consistent with the people's precious right to exercise the initiative power. [Citation.] It also comports with the Legislature's ability to change statutory provisions outside the scope of the existing provisions voters plausibly had a purpose to supplant through an initiative. [Citation.] We therefore hold that where a statutory provision was only technically reenacted as part of other changes made by a voter initiative *and* the Legislature has retained the power to amend the provision through the

19

ordinary legislative process, the provision cannot fairly be considered 'expressly included in . . . a ballot measure' . . . ." (*County of San Diego v. Commission on States Mandates, supra*, 6 Cal.5th at p. 214.)  Therefore, reenactment of section 189 in full by Proposition 115 did not affect the Legislature's ability to revise any portion of section 189 not directly addressed by the initiative.

The Legislative Counsel's Digest for Senate Bill No. 1437 supports our determination that the legislation did not unconstitutionally amend Propositions 7 and 115.  "The Legislative Counsel's Digest is the official summary of the legal effect of a bill and is relied upon by the Legislature throughout the legislative process.  Although it is not binding, the digest is entitled to great weight." (*Madrigal v. California Victim Comp. & Government Claims Bd.* (2016) 6 Cal.App.5th 1108, 1117.)

In 1999, Assembly Bill No. 1574 amended Penal Code section 189 to expand the felony murder rule to include torture.  (Stats. 1999, ch. 694, § 1.)  The Legislative Counsel's Digest for that legislation states, in part:  "Because it would amend an initiative statute, the bill would require a 2/3 vote of the membership of each house of the Legislature." (Legis. Counsel's Dig., Assem. Bill No. 1574 (1999-2000 Reg. Sess.) 5 Stats. 1999, Summary Dig., p. 315.)  The Legislative Counsel's Digest for Assembly Bill No. 1838, enacted a few years later, which added murder perpetrated by means of a weapon of mass destruction to section 189, subdivision (a), includes the same proviso regarding the need for a 2/3 vote by the Legislature.  (Legis. Counsel's Dig., Assem. Bill No. 1838 (2001-2002 Reg. Sess.) 6 Stats. 2002, Summary Dig., pp. 250-251.)

Notably, the Legislative Counsel's Digest for Senate Bill No. 1437 does not include a proviso regarding the need for a two-thirds vote.  The lack of such language, though not conclusive, is evidence that the Legislative Counsel, and therefore the

Legislature, did not intend the new legislation to amend either of those voter-approved initiatives.[5]

The only two published appellate cases addressing this issue before today— *Gooden, supra*, 42 Cal.App.5th 270 and *People v. Lamoureux* (2019) 42 Cal.App.5th 241 (*Lamoureux*)—are consistent with our conclusion that Senate Bill No. 1437 does not unconstitutionally amend Proposition 7 or Proposition 115. In both cases, the defendants had filed petitions to vacate their murder convictions and obtain resentencing pursuant to the procedures set forth in section 1170.95. (*Gooden, supra*, at p. 274; *Lamoureux, supra*, at p. 246.) The trial court in *Lamoureux* denied the defendant's petition on the ground Senate Bill No. 1437 was unconstitutional (*Lamoureux, supra*, at p. 246), while the trial court in *Gooden* concluded Senate Bill No. 1437 was constitutional and denied the district attorney's motion to dismiss the defendant's petition (*Gooden, supra*, at p. 274).

In *Gooden*, the appellate court concluded "Senate Bill 1437 was not an invalid amendment to Proposition 7 or Proposition 115 because it neither added to, nor took away from, the initiatives." (*Gooden, supra*, 42 Cal.App.5th at p. 275.) In *Lamoureux*, the same appellate court used the same analysis as it had in *Gooden* to again conclude Senate Bill No. 1437 did not unconstitutionally amend the earlier enacted

---

[5] In denying defendant's petition for resentencing, the trial court relied in part on the Legislative Counsel's opinion that a previous piece of proposed legislation limiting the felony murder rule and the natural and probable consequences doctrine would have unconstitutionally amended Propositions 7 and 115. That the Legislative Counsel concluded a previous proposal would have unconstitutionally amended those initiatives, while not making a similar conclusion regarding Senate Bill No. 1437, strengthens our conclusion that Senate Bill No. 1437 does not unconstitutionally amend them. Our conclusion is also supported by the legislative history of Senate Bill No. 1437, in which the principal consultant of the Senate Public Safety Committee concluded the legislation did not amend Proposition 7 or Proposition 115, or any of several other initiatives. (Gabriel Caswell, Consultant to Sen. Public Safety Com., mem. to Sen. Public Safety File for Sen. Bill No. 1437 (2017-2018 Reg. Sess.) pp. 12-15.)

21

initiatives.  (*Lamoureux, supra*, 42 Cal.App.5th at p. 246.)[6]  The *Lamoureux* court further concluded that "the resentencing provision of Senate Bill 1437 does not contravene separation of powers principles or violate the rights of crime victims."  (*Ibid.*)[7]

**DISPOSITION**

The postjudgment order is reversed and the matter is remanded to the trial court with directions to consider the merits of defendant's petition under Penal Code section 1170.95.

FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


IKOLA, J.

---

[6]  The appellate court in *Lamoureux* also concluded that Senate Bill No. 1437 did not improperly encroach on core executive branch functions, violate the separation of powers, or violate the rights of crime victims under Marsy's Law.  (*Lamoureux, supra*, 42 Cal.App.5th at pp. 256, 264-265; see (Ballot Pamp., Gen. Elec. (Nov. 4, 2008), text of Prop. 9, § 1 ["This act shall be known, and may be cited as, the 'Victims' Bill of Rights Act of 2008:  Marsy's Law"].)  None of these issues is raised here.

[7]  On the day this court heard oral argument in the present case, the California Supreme Court denied petitions for review and petitions to depublish both *Gooden* and *Lamoureux*.